No. 40,503

Robert C. McPherson, *Appellant*, v. Lynn Leichhardt, Director, Allen Whittaker, Secretary, and R. L. Whitesell, Treasurer, as Trustees of the Clearwater, Kansas, School District, and Calvin Eugene Chandler, *Appellees*.

(310 P. 2d 941)

Opinion filed May 11, 1957.

*Pat Warnick, Allan B. Phares, William C. Norton* and *H. E. Pat Healy*, all of Wichita, were on the briefs for the appellant.

*Robert C. Foulston*, of Wichita, argued the cause and *George B. Powers, Carl T. Smith, John F. Eberhardt, Samuel E. Bartlett, Stuart R. Carter, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris* and *Gerald Sawatzky*, all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Hall, J.: This is an appeal from an order sustaining demurrers to the evidence against the plaintiff in an automobile negligence action.

This negligence action arose out of a collision between plaintiff's car and a school bus at a country intersection in which the plaintiff prayed for recovery of damages and the defendant cross petitioned against the plaintiff for damages.

The plaintiff was employed at an aircraft plant in Wichita and had lived in the vicinity for a number of years. This accident occurred while driving his automobile from the plant to his home. From his place of work, the plaintiff followed a blacktop highway south for two miles until the highway turned west. Plaintiff's home was south so he did not turn west on the blacktop highway but went straight south on a gravel road known as Gilda Street. From this point to the intersection of 55th Street, another gravel road where the accident occurred, was a distance of about one-third of a city block more or less. Along the north side of 55th Street,

going east and west, and east of Gilda Street was a shelterbelt. This shelterbelt was located 10 feet north of the north line of 55th Street and ended about 15 to 20 feet east of Gilda Street. On the day of the accident, the weather was clear and dry. There were no traffic signs of any kind at the intersection. The accident occurred as the plaintiff crossed the intersection.

At the conclusion of plaintiff's case, defendants demurred to plaintiff's evidence and the court sustained the demurrers.

Plaintiff specifies as error the sustaining of the demurrers to his evidence and the ruling that the testimony of the plaintiff showed him guilty of contributory negligence as a matter of law.

The only evidence in the case was the plaintiff's testimony. On direct examination he testified:

". . . I had passed the intersection frequently for a couple of years.

"Before I entered the intersection, I don't know how fast I was going. I wasn't going too fast. I slowed down, I guess around 40 miles per hour. I was not going 50 or 60. . . .

". . . There is a shelter belt at this intersection on the east side of the road and you can't see anybody until it is fairly close. . . .

". . . As I approached the intersection, I looked east, then I looked west and that is the last I knew. In my judgment, I could see 30 or 40 feet east on 55th Street. I looked east; I didn't see anything coming. There was no car in the intersection itself as I entered. The road was clear. After I looked east, I looked west. I didn't see anything coming from the west. The road was clear to the south and that is the last I remember.

". . . I can't tell you where my car was when it was struck. The last I remember, she had just started into the intersection, and everything just blacked out. As I entered the intersection, there were no other vehicles in it. It was clear of other traffic. I never did see the bus that struck me. Fifty-fifth Street right there is about 35 feet wide. I think Gilda Street is narrower. Both of them are dirt and gravel."

On re-direct examination, the plaintiff testified:

". . . When Mr. Foulston asked me if it was a blind corner, I said yes. It would be blind to a certain extent. . . .

"It is about 3¼ miles from the entrance of the Prospect Plant to the intersection. . . . It is about one-third of a block to the blacktop going south till you hit this corner where the accident happened. . . . As you hit the corner of the shelter belt, you could see east 30 or 40 feet. . . . No stop signs were there at the time of the accident. The front of my car was about

due west of the shelter belt when I looked east. The driver's seat is about five feet back from the front end of the car and I could see 30 to 40 feet east on 55th Street at that time. I looked east and nothing was there. Then I looked back west. At the time I looked east, I was about 15 feet north of the east line of 55th Street where I was sitting in my car."

In presenting this appeal, appellant states:

"There is nothing new about the question involved in this appeal. . . . In sustaining the demurrers of the defendants, the trial court followed the case of *Green v. Higbee,* 176 Kan. 596. We think the case at bar has the same distinguishable features as it relates to the facts that this Court set out in Page 600 of the opinion when this Court differentiated *Green v. Higbee,* from prior decisions of this Court."

Plaintiff relies upon this court's decisions in *Lawrence v. Kansas Power & Light Co.,* 167 Kan. 45, 204 P. 2d 752; *Thompson v. Barnette,* 170 Kan. 384, 227 P. 2d 120; *Fry v. Cadle,* 171 Kan. 14, 229 P. 2d 724; *Cain v. Steely,* 173 Kan. 866, 252 P. 2d 909. These were the cases distinguished by the court in *Green v. Higbee,* 176 Kan. 596, 272 P. 2d 1084.

Defendants contend the district court was correct in following *Green v. Higbee,* supra.

In *Green v. Higbee,* supra, the plaintiff appealed from an order sustaining a demurrer to his evidence in an action involving a collision in a rural intersection. The court examined the plaintiff's evidence and held that the demurrer was properly sustained.

*Green v. Higbee,* supra, is recognized as a leading automobile negligence case in this jurisdiction and has been followed with approval in more recent cases (*Koch v. Suttle,* 180 Kan. 603, 306 P. 2d 123).

The court wrote the following syllabus which is particularly applicable to accidents occurring at blind intersections of rural roads.

"A blind intersection of rural roads, without stop signs or traffic signals, presents a highly dangerous place which all motorists, in the exercise of due care, should approach with caution commensurate with the hazards involved, and this is especially true where it is known that for some distance near the intersection it is so completely blind that, when vehicles approach at right angles, neither motorist can see the other's vehicle until it is entering or has entered the intersection. (Syl. 1.)

"Stop and right-of-way statutes pertaining to intersections at through highways are not controlling with respect to conduct at intersections such as that described in paragraph 1, following *Revell v. Bennett,* 162 Kan. 345, 176 P. 2d 538. (Syl. 2.)

"The right of way at an intersection such as that described in paragraph 1 is not an absolute and inflexible right but a relative right. Its main purpose

is to demand care of motorists commensurate with the danger of collision. (Syl. 3.)

"The right of way and the right to assume absence of negligence by others does not absolve the possessor of the prior right of the consequence of his own independent negligent acts. Such rights may not be invoked by one who has violated the rules of the road himself by recklessly driving through a known blind intersection, such as that described in paragraph 1, without previously maintaining a lookout, from places where he might have seen an approaching vehicle, at a speed which admittedly renders it entirely impossible to avoid injury to himself and others, after reaching the intersection, and without sounding a warning of his approach. (Syl. 4.)

"Where the only evidence involved consists of admissions by a party which plainly convict him of negligence which contributed to an injury advantage may be taken thereof by demurrer. (Syl. 5.)

"Whether an act, or acts, constitute negligence, or a contributing cause of injury, is ordinarily a question for the jury but where all the evidence upon which a party relies for recovery consists of his own admissions which clearly disclose the injury was the direct result of the concurrent negligence of two motorists a question of law is properly presented for determination of the court." (Syl. 6.)

After a thorough review of this case we agree with the district court that the law of *Green v. Higbee*, supra, should be controlling. We are unable to make any material distinction of fact between the two cases.

In reviewing the plaintiff's evidence, we have followed the elementary rule that on demurrer the plaintiff is entitled to have his evidence considered in the light most favorable to him. On the other hand, we have also adhered to an equally well established rule that a party is bound by his own plain unequivocal admissions. This rule is especially applicable where the plaintiff's case stands solely on his own testimony and no physical or other facts are in dispute. Here we need not speculate concerning plaintiff's evidence. By his own admission, he entered a blind rural country intersection at about 40 miles an hour and did not see what was plainly to be seen. In the instant case all of the essential facts of contributory negligence as a matter of law are established by plaintiff's admissions. Following *Green v. Higbee*, supra, the demurrer was properly sustained.

The judgment is affirmed.