No. 42,100

In the Matter of the Estate of Donald Rex Magie, Deceased. (G. I. Robinson, Administrator of the Estate of Donald Rex Magie, Deceased, *Appellant*, v. Homer James Livingston, *Appellee*.)

(360 P. 2d 6)

Opinion filed March 4, 1961.

*G. I. Robinson*, of Ellinwood, argued the cause and was on the briefs for the appellant.

*H. Lee Turner*, of Great Bend, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Parker, C. J.: G. I. Robinson, as administrator of the estate of Donald Rex Magie, deceased, brought this action under the provisions of the wrongful death act (now G. S. 1959 Supp., 60-3203), in the district court of Barton County, against Homer James Livingston to recover damages for the death of his intestate decedent which occurred as a result of a collision between two motor vehicles at intersecting highways. The appeal is from an order sustaining the defendant's general demurrer to the plaintiff's evidence and from an order overruling the plaintiff's motion for a new trial.

No questions respecting the sufficiency of the pleadings are involved. Hence, without reference to specific acts of negligence therein set forth, all that need be said regarding them is that the petition charges the carelessness and negligence of the defendant (Livingston), in driving his automobile upon the highway and into such intersection, was the sole and proximate cause of the collision and the resulting death of Donald Rex Magie; that the answer, after admitting the collision occurred and the death of decedent resulted therefrom, denies that the defendant was guilty of any negligence which was the proximate cause of the collision or decedent's death, and charges that both the collision and the death were caused solely and proximately by the decedent's own negligence in driving his automobile upon the highway and into the intersection; and that the reply in general terms denies all allegations of the answer.

With issues joined as indicated the cause came on for trial by a jury. At the conclusion of plaintiff's evidence defendant demurred to such evidence on grounds (1) that it showed as a matter of law that plaintiff's decedent was guilty of contributory negligence which was the direct and proximate cause of the collision and his resulting death, thus barring plaintiff's right to recover, and (2) that it failed to establish any negligence whatsoever on the part of the defendant sufficient to support a recovery in favor of plaintiff and against the defendant.

Action by the trial court on the foregoing demurrer is best reflected by its journal entry of judgment, approved by counsel for the respective parties, which reads:

"And now the court, having heard the arguments, statements of counsel and having heard the evidence and being fully advised in the premises finds

that plaintiff's decedent, having died as a result of the collision out of which this matter arises, is entitled to the presumption that he was exercising due and proper care for his own safety at the time said collision occurred subject to being rebutted by direct or circumstantial evidence to the contrary. That the uncontradicted testimony of plaintiff's witnesses established that plaintiff's decedent was traveling at an excessive rate of speed immediately prior to said collision under the then existing circumstances and additionally that plaintiff had failed to establish facts sufficient to support a finding of negligence on the part of defendant which could form the basis for recovery. That by reason of the premises, said demurrer should be sustained.

It is Therefore by the Court, Considered, Ordered, Adjudged and Decreed that defendant's general demurrer to plaintiff's evidence should be and the same is hereby sustained, the jury be and the same hereby is discharged from further deliberations and the costs of the action assessed against the plaintiff."

Thereupon, following the overruling of his motion for a new trial, plaintiff perfected the instant appeal.

There can be little, if any, dispute between the parties regarding the founding facts necessary for a proper understanding of the conditions and circumstances existing prior to, and at the time of, the unfortunate accident resulting in this lawsuit and they may be stated thus:

In October, 1956, located at a point approximately two miles north of Great Bend, in Barton County, there was an intersection of township and county highways. The intersection was formed by a blacktop county road, running east and west on both sides of the center point of the intersection, a blacktop county road, running south from the center point of the intersection and a graveled township road, running north from the center point of the intersection. Traffic coming into the intersection from all directions, except the township road, was governed by first, a "slow" sign; second, a "T" intersection sign; and third (and nearest to the intersection), a "yield right of way" sign. There were no traffic signs or controls directing traffic approaching from the north township road in a southerly direction into the intersection. However, it appears that, for purposes not here material, a "Private Road" sign, facing the east and west county highway, had been placed, without authorization of the highway authorities and in violation of the public nature of such highway, northeast of the intersection in question by an individual who maintained the north road for the township. In any event the uncontroverted evidence discloses the signs governing traffic approaching the intersection from the county highways had

been erected some five years before October, 1956, shortly after such highways were opened, and that the private road sign had been put up some three years prior to October, 1956.

At approximately 8:20 a. m., on October 30, 1956, Homer James Livingston, accompanied by his twelve-year-old daughter, was driving his Ford sedan in a southerly direction on the township road toward the intersection in question. At approximately the same time Donald Rex Magie was driving his Nash stationwagon in an easterly direction on the east and west county highway toward the same intersection which, at that point, was twenty-two feet in width. The weather was clear, the highways were dry and visibility was good. Both drivers were familiar with the roads and well acquainted with all traffic signs and regulations heretofore mentioned. Notwithstanding, the two motor vehicles were driven into the intersection where a collision occurred, the front end of the Magie car striking the approximate back end of the Livingston car, the point of impact being approximately the center of the intersection. Following the collision the Magie car proceeded on in an easterly direction and came to rest in a ditch on the south side of the east and west road at a point seventy-eight feet from the point of impact, facing west. Magie was thrown from the car and later died of injuries. The Livingston car came to rest in the barrow ditch on the east side of the north and south road at a point seventy-eight and a fraction feet from the point of impact, facing south.

At this point it should be noted that this is a negligence action wherein the appellant (plaintiff), in attempting to establish a right to relief against the appellee (defendant), limited his evidence to testimony from four witnesses and that, except as their testimony tended to establish the facts heretofore referred to as uncontroverted, the evidence of three of such witnesses, i. e., the decedent's wife, the decedent's mother and the township road maintainer, did not even purport to describe or detail the acts and conduct, negligent or otherwise, of either the appellee or the appellant's intestate decedent just prior to and at the time of the collision at the intersection. In other words it may be stated, that all evidence of the character mentioned came from the lips of appellant's fourth witness Joe Slipke, a trooper for the Kansas State Highway Patrol with three years experience, who investigated the accident and that, in the face of the record presented, our decision as to the propriety of the trial court's ruling on the demurrer to the evidence depends,

for all practical purposes, on the force and effect to be given his testimony while testifying as the appellant's own expert witness during the trial.

Resort to the record, where in comments preliminary to its action in sustaining the demurrer, the trial court said "Never before has the court seen so clear a case of negligence spelled out against a party by his own testimony, as in this case.", discloses the ultimate question which we are called upon to here review is whether the appellant's evidence convicts his intestate decedent of contributory negligence as a matter of law barring his recovery.

There are, of course, certain fundamental principles of law applicable to negligence actions generally which must be given consideration in every negligence action in order to determine whether the facts of the particular case involved warrant or preclude recovery. For that reason we direct our attention to established rules particularly applicable under the facts and circumstances of the case at bar.

That a plaintiff's negligence, or his contributory negligence, bars his recovery in an action for damages sustained in an automobile collision and requires the sustaining of a demurrer to his evidence as a matter of law where either negligence or contributory negligence clearly appears from the evidence introduced by him cannot be questioned. See *Goodloe v. Jo-Mar Dairies Co.,* 163 Kan. 611, 621, 185 P. 2d 158; *Most v. Holthaus,* 170 Kan. 510, 513, 227 P. 2d 144; *Stephens v. Bacon,* 176 Kan. 460, 463, 271 P. 2d 285, and cases there cited. Moreover while the general rule is that the burden of establishing the plaintiff's negligence or contributory negligence rests upon the defendant, if the plaintiff's own evidence shows him guilty of negligence which precludes his recovery, the defendant may take advantage by demurrer (*Houdashelt v. State Highway Comm.,* 137 Kan. 485, 21 P. 2d 343; *Cruse v. Dole,* 155 Kan. 292, 124 P. 2d 470). However it must be remembered an equally well-established rule is that a plaintiff cannot be held to be guilty of negligence as a matter of law or—as the court held in the case at bar—a demurrer sustained to his evidence on that premise if the evidence of record, viewed in the light most favorable to his cause, is of such character that reasonable minds in the exercise of fair and impartial judgment might reach different conclusions respecting those questions. In that event, our decisions hold a demurrer to his evidence should be overruled and such issues submitted to a jury for decision (See, e. g.,

*In re Estate of Modlin,* 172 Kan. 428, 434, 241 P. 2d 692; *Cain v. Steely,* 173 Kan. 866, 252 P. 2d 909; *Briggs v. Burk,* 174 Kan. 440, 442, 257 P. 2d 164; *Siegrist v. Wheeler,* 175 Kan. 11, 259 P. 2d 223; *Krentz v. Haney,* 187 Kan. 428, 357 P. 2d 793).

From what has been heretofore related we can now direct our attention to the decisive evidence to which we have previously referred.   It would add nothing to our reports to here detail all of the testimony of the witness Joe Slipke, as presented by a confusing and incomprehensive record, and we shall not attempt to do so. However it may be stated that after an extended examination of the record it is our opinion the testimony of this witness, when limited to matters essential to a disposition of the ultimate question heretofore mentioned and given the benefit of all inferences to which it is entitled on appellate review of a ruling sustaining a demurrer to the evidence, in substance discloses:

1. Full and complete corroboration, either directly or indirectly, of the facts set forth early in this opinion as necessary for a proper understanding of the conditions and circumstances existing in the vicinity of and at the highway intersection just prior to and immediately after the involved accident.

2. That in approaching the intersection from the west on the morning in question appellant's intestate decedent had passed a "slow" sign, a "T" intersection sign and a "yield right of way" sign in the order mentioned.

3. That under the existing conditions and circumstances the signs mentioned, controlling traffic at the intersection, required the driver of an automobile approaching from the west to yield the right of way to the driver of an automobile approaching the intersection from the north.

4. That the major portion of appellee's automobile was south of the center line of the east and west highway, which at that point was twenty-two feet in width, when the front end of the automobile driven by the appellant's intestate decedent collided with the back end of appellee's automobile, the point of impact being approximately the center line of the involved intersection.

5. That among other things on his direct examination, while testifying as the appellant's witness, Slipke was asked questions to which he made answers as follows:

"Q. I am asking you as to whether or not you have an opinion as to whether or not high speed was involved in this accident?

"A. Yes, I have an opinion.

"Q. What is that opinion?

"A. Yes, I would say there was high speed involved.

. . . . . . . . . . . . . .

"Q. Do you have an opinion, I will ask you again, as to whether or not the Magie car was traveling at an excessive rate of speed on October 30, 1956, prior to this accident?

"A. I would have to say 'yes, sir', at that location.

"Q. You state what?

"A. I would have to say 'yes,' at that location, taking at that location."

6. That when questioned on cross-examination, with respect to his answers to the foregoing questions, Slipke testified it was his opinion the speed of the Magie car just prior to the impact was sixty miles an hour or better.

In the face of evidence presented in the court below, all of which has been carefully reviewed in the light of the rules to which we have heretofore referred, we have little difficulty in concluding that in this case the appellant plaintiff's own evidence makes it clearly appear that the death of his intestate decedent was not only contributed to but caused by such decedent's own negligence under conditions and circumstances which preclude appellant's recovery in this action as a matter of law. It follows the trial court's action in sustaining the demurrer to his evidence on that basis was proper and must be upheld.

In an obvious attempt to avoid the force and effect of the conclusion just announced it is urged that appellant's intestate decedent is entitled to the presumption that with love of life, the instinct of self-preservation and the known disposition of men to avoid injury, appellant is entitled to the presumption that his intestate decedent exercised ordinary care and diligence to avoid the collision. Conceding *arguendo* that is the rule, the difficulty, from appellant's standpoint, is that the presumption is always rebuttable and is overcome when there is proof to the contrary (*Long v. Foley*, 180 Kan. 83, 92, 299 P. 2d 63; *Stroud v. McCusker*, 175 Kan. 257, 261, 263 P. 2d 260; *In re Estate of Modlin*, 172 Kan. 428, 241 P. 2d 692; *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 621, 185 P. 2d 158; 61 C. J. S. Motor Vehicles, 240 § 512; 20 Am. Jur., Evidence, 164, 214 §§ 160, 217). In this case it is clear appellant's evidence supplies the proof required to overcome the presumption.

In conclusion it should be stated it is neither necessary nor required that we here labor other contentions advanced by appellant

as grounds for reversal of the trial court's action in sustaining the demurrer, in overruling his motion for a new trial and in rendering judgment against him. It suffices to say that after giving them careful consideration such contentions have been rejected as affording no sound basis for reversal of the trial court's rulings and judgment.

The judgment is affirmed.