No. 45,091

Phyllis (Farlow) Schenck, *Appellant*, v. Frank Thompson, *Appellee*.

(443 P. 2d 298)

Opinion filed July 13, 1968.

*Charles F. Forsyth,* of Erie, argued the cause, and *Robert K. Scovel,* of Independence, *Clark M. Fleming,* of Erie, and *John W. White,* of Chanute, were with him on the brief for the appellant.

*Robert L. Howard,* of Wichita, argued the cause, and *Robert C. Foulston* and *Benjamin C. Langel,* of Wichita, and *Jack L. Lively,* of Coffeyville, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a damage action resulting from an automobile collision.

The collision occurred shortly after 2:00 a. m. on August 4, 1963, about one and three-quarters miles south of Independence, Kansas, at the intersection of an east-west country road and South Tenth

Street Highway, a north-south thoroughfare. Traffic approaching the highway is controlled by stop signs located east of the intersection on Poor Farm Road and west of the intersection on Country Club Road. The plaintiff, Phyllis Farlow, now Schenck, driver of a 1961 Chevrolet Corvair, was traveling in a westerly direction on Poor Farm Road and approaching the intersection from the east. The defendant was driving his 1961 Pontiac Tempest station wagon in an easterly direction on Country Club Road and approaching the intersection from the west.

Before going into the details of the collision, we pause to give the history of this already extensive litigation. The case has been tried to a jury on three occasions, each trial ending with the jury deadlocked and unable to reach a verdict. The first two trials were held in Montgomery county before the Honorable Warren B. Grant. Upon Judge Grant's request, the Honorable George W. Donaldson was assigned to try the case. After it was discovered the facts in the case had become the basis of a mock trial in the local high school, Judge Donaldson granted a change of venue to Neosho county, where the third trial was held before him in Septemper 1966. After four days of trial and more than a full day of deliberation, the jury once again was unable to agree, and was discharged. On September 30, the defendant, pursuant to K. S. A. 60-250($b$), renewed his motion for directed verdict. The motion was sustained on November 2, and plaintiff has appealed.

We return to the events leading up to the collision.

About 7:30 p. m. on the evening of August 3, the plaintiff picked up two of her friends, Mr. and Mrs. Robert Thornberry, and drove them to a small club south of Independence where Mr. Thornberry played in a dance band. Their route took them south on Tenth Street through the intersection at which the accident was later to occur. Plaintiff and Mrs. Thornberry remained at the club throughout the evening, and about 12:30 a. m., upon Mr. Thornberry's finishing his performance, plaintiff drove the Thornberrys back to Independence to the Dairy Delight for sandwiches and coffee. In so doing, she again drove through the South Tenth Street-Poor Farm Road intersection.

At the Dairy Delight plaintiff and the Thornberrys met two young men who asked plaintiff to take them out to the country to a place southeast of Independence known as "Lover's Leap" where they were to meet someone. Plaintiff and the Thornberrys agreed, and

the five proceeded toward Lover's Leap, with plaintiff driving. The Thornberrys rode in the front seat with plaintiff, and the two boys were in the back seat. Plaintiff again came to the intersection in question, turned left, and went east on Poor Farm Road. Upon arriving at their destination, which was four or five miles from the intersection, the two boys decided they wanted to go back to town; so, without stopping at Lover's Leap, plaintiff retraced her route on Poor Farm Road, driving in a westerly direction toward the intersection at which the collision later occurred.

The night was very dark and the road on which plaintiff was driving was hilly, there being approximately eleven hills between Lover's Leap and the intersection. As plaintiff approached the intersection from the east, traveling at a speed of fifty to fifty-five miles an hour, she came over the last hill, and without reducing her speed or stopping at the stop sign located twenty-seven feet east of the intersection, drove into the intersection. Plaintiff applied the brakes after she was approximately fifteen feet past the stop sign and skidded in a straight line in her right lane of travel approximately fifty feet across Tenth Street into the defendant's automobile. Defendant had approached Tenth Street from the west on Country Club Road, and after either stopping or slowing at the stop sign located eighty-five feet west of the intersection, was in the process of making a left-hand turn onto Tenth Street. According to plaintiff's witnesses, the point of impact was approximately thirty-eight feet west of the intersection and twelve feet south from the north line of Country Club Road. Plaintiff's skid marks ceased about sixteen feet west of the west side of Tenth Street.

As a result of the collision plaintiff suffered severe injuries, as did the defendant and his wife. Mrs. Thornberry was killed, and plaintiff's other three passengers were also injured.

The trial judge, in sustaining the motion for directed verdict, filed a lengthy memorandum opinion, portions of which we quote:

"So, for the purpose of the motion before the court, the negligence of defendant is established and the only question to be determined is whether the evidence, viewed most favorably to plaintiff, compels the conclusion that her own negligence was a contributing cause of the collision and of her resulting injuries.

"Plaintiff drove down a hilly country road at 50 to 55 miles per hour, across an intersection, and into defendant's car on the other side of the intersection. She knew that the intersection was on her route and that there was a sign which required her to stop before entering the intersection, but she did not stop and there is no evidence that she slackened her speed until she applied

her brakes, which, according to the undisputed physical evidence, was when she was in effect in the intersection.

". . . The court knows of no rule which excuses a driver because there was no warning that a stop sign lay ahead. Besides, it cannot be ignored that the total distance from where she entered the Poor Farm Road to the intersection in question was not more than four miles, so she knew that she was about to come to an intersection where she was required to stop.

". . . the court finds that the evidence adduced by the plaintiff herself compels the conclusion that she did not exercise due care for her own safety and that her negligent conduct was a direct contributing cause of the collision."

Plaintiff raises a number of points, but the thrust of her appeal centers on the propriety of the trial court's sustaining the motion for directed verdict on the basis she as a matter of law was negligent and her negligence contributed to and was a proximate cause of the collision.

Ordinarily, the existence of contributory negligence is a question of fact, it being for the jury to determine from the circumstances of each particular case whether the conduct of a party was such as would be expected of a reasonably prudent person. Only when the plaintiff's conduct can be said as a matter of law to have fallen below the standard of a reasonably prudent person, may the question of contributory negligence be taken from the jury and determined by the court. In ascertaining whether as a matter of law plaintiff is contributorily negligent, precluding recovery, the evidence and all inferences that may reasonably be drawn therefrom must be accepted as true and considered in the light most favorable to the plaintiff. If the facts viewed in that manner be such that reasonable minds might reach different conclusions therefrom, the issue of contributory negligence must go to the jury. This is true, although the evidence is weak and inconclusive. (*Smithson, Executor v. Dunham,* 201 Kan. 455, 441 P. 2d 823; *Bingham v. Hillcrest Bowl, Inc.,* 199 Kan. 40, 427 P. 2d 591; *Gardner v. Pereboom,* 197 Kan. 188, 416 P. 2d 67; *Newman v. Case,* 196 Kan. 689, 413 P. 2d 1013; *Deemer v. Reichart,* 195 Kan. 232, 404 P. 2d 174.)

We must first give attention to rulings of the trial court pertaining to the admissibility of certain evidence that plaintiff contends was relevant to the question of her contributory negligence. These rulings relate directly to plaintiff's theory that the stop sign located to the east of the intersection on Poor Farm Road was obscured for westbound traffic by a mailbox. She argues that had this evidence been admitted and considered along with the other facts and circumstances surrounding the collision, including evidence she was

temporarily blinded by the bright lights of defendant's automobile, she could not be contributorily negligent as a matter of law.

Plaintiff offered in evidence a photograph (Plaintiff's Exhibit 5) taken from a point on Poor Farm Road looking west toward the intersection, showing the stop sign partially blocked by a mailbox located east of the sign. Upon defendant's objection that the exhibit was obviously a "staged" photograph and that there had been no foundation for its introduction, the trial court refused to admit the exhibit, both at pretrial and again at trial. The judge further ruled "as a matter of law there was no legal obstruction to the view of the stop sign." Consistent with this ruling, he refused to admit any evidence throughout the trial showing a driver's difficulty in observing the stop sign. Plaintiff's counsel was also denied the opportunity to lay a further foundation for the admission of the exhibit. We are unable to find that prejudicial error resulted in these rulings. There was other pictorial evidence before the jury showing the relative positions of the mailbox and stop sign, although neither party produced evidence as to the exact distance between the objects. The size of the mailbox in relation to the sign was such that a driver's view would have been obstructed only momentarily; otherwise the view of the sign was unimpaired to a driver approaching the intersection from the east. (We note in the previous trials there was testimony that the stop sign was clearly visible for a distance of 285 feet east thereof.)

There is even a more cogent reason why plaintiff cannot complain of the trial court's rulings. Tenth Street was a through highway, presumably designated by proper authority as such, with stop signs as authorized by G. S. 1961 [now K. S. A.] 8-568. Thus, Tenth Street was a preferred or favored highway, and Poor Farm Road was a secondary or servient road. Although plaintiff suffered retrograde amnesia as a result of the accident, and was unable to recall any of the events of that tragic night, she did testify that she had, on prior occasions, driven her automobile on Tenth Street and knew it was a through street, protected at its various intersections by stop signs. The undisputed evidence was that she had been through this particular intersection three times on the night of the collision—once going south on Tenth Street out of Independence, once going north toward Independence, and again going east on the way to Lover's Leap. She cannot escape the fact that she knew of the preferential status of Tenth Street and, hence, was required to obey the law as she approached the intersection.

There is substantial authority that when a motorist on a secondary or servient road knows that he is approaching a favored street or highway, the fact the stop sign is obscured or obliterated or has become illegible is immaterial in respect to his negligence in failing to stop or otherwise recognize the perferential character of the favored highway. (*Bell v. Crook,* 168 Neb. 685, 97 N. W. 2d 352, 74 A. L. R. 2d 223; *Eberhardt v. Forrester,* 241 S. C. 399, 128 S. E. 2d 687; *Rowan v. Becker,* 73 S. D. 273, 41 N. W. 2d 936; *Metzger v. Moran,* 1 Wn. 2d 657, 96 P. 2d 580; 8 Am. Jur. 2d, Automobiles and Highway Traffic § 752; 61 C. J. S., Motor Vehicles § 516n; Annos. 162 A. L. R. 927, 74 A. L. R. 2d 242.)

In *Metzger v. Moran,* supra, the lower court refused to admit testimony offered by the appellants tending to show they did not know that the street they were approaching was an arterial highway and that their view of a stop sign was obstructed by parked vehicles. In upholding the ruling, the appellate court viewed the matter strictly, saying:

"When the proper authority has established an arterial highway and notified its existence to the public by the erection of a stop sign, any one approaching the arterial from an intersecting street is presumed to know that it is such and required to obey the statutory injunction to stop. He cannot be heard to say he did not know of the existence of the sign, or that he could not see it. . . . If the appellants could have excused their failure to stop by showing that parked cars interfered with their seeing the sign, other drivers failing to stop could, with equal reason, urge that their view was interrupted by passing vehicles to their right. The purpose of the law can be accomplished only by imputing to the driver knowledge of the existence of the sign and full responsibility for failure to stop before entering the arterial [highway]." (pp. 660, 661.)

In *Bell v. Crook,* supra, the familiarity of a driver on a secondary highway with the favored status of the through highway protected by a stop sign which had been temporarily displaced, or otherwise made invisible, was stressed. In an opinion well supported by authority, the court stated:

"An arterial highway is not deprived of its character or status because stop signs on an intersecting road are temporarily displaced or otherwise made invisible.

"If a motorist knows of the through character of a highway, the presence or absence of warning signs is immaterial as respects his negligence in failing to yield the right-of-way." (Syl. ¶¶ 3, 4.)

Nor will the fact that a stop sign is not in proper position or sufficiently legible to an ordinarily observant person, and thus excuse

an alleged violator under G. S. 1961 Supp. [now K. S. A.] 8-513 from prosecution, cause the preferred highway to lose its status as such and relieve a motorist approaching and crossing such highway from exercising due care. In *Jones v. McCullough*, 148 Kan. 561, 83 P. 2d 669, a stop sign, which ordinarily would have warned the defendant traveling south on a "sanded" road to stop at an intersection with a paved arterial highway, was for some reason absent or missing, and defendant entered the intersection and collided with plaintiff's eastbound vehicle. In rejecting defendant's contention that he was not obliged to stop, the court said:

"When an ordinance designates a street as a principal street and as a right-of-way street and a stop sign or a warning of its character is placed thereon, the mere temporary removal or destruction of such sign at a given point does not alter the character of such street, nor deprive a driver thereon of his right of redress against another for injuries sustained, by reason of the violation of such ordinance and the violation of another ordinance which also gave such driver the right of way if he entered the intersection first or entered it at the same time as another, which latter person entered it from the left of the former, and *this is true notwithstanding the fact a police ordinance provided that the other police ordinance should not be enforceable against an alleged violator, if at the time and place of the alleged violation the sign was not in proper position and sufficiently legible to be seen by an ordinarily observant person.*" (Syl. ¶ 6.) (Emphasis added.)

The rationale of the foregoing authorities is persuasive, and we believe, under the facts here, plaintiff's duty to exercise ordinary care in approaching the intersection with which she was familiar was in no way lessened by the fact her view of the stop sign may have been momentarily impaired by the mailbox.

From the physical facts leading up to the collision, it is apparent that plaintiff did not realize she was approaching the intersection, much less that she was about to come to a stop sign. Nevertheless, she was charged with notice of the intersection that lay ahead and was required to obey the applicable rules of the road. The law required her to stop her vehicle at the stop sign in compliance with G. S. 1961 Supp. [now K. S. A.] 8-568 ($e$), and yield the right of way to any vehicle which had entered the intersection from another highway, or which was approaching so closely as to constitute an immediate hazard (G. S. 1961 Supp. [now K. S. A.] 8-552 [$b$]). The uncontradicted evidence was that plaintiff was driving at a speed of fifty to fifty-five miles per hour. In fulfilling her duty under G. S. 1961 Supp. [now K. S. A. 1967 Supp.] 8-532 ($a$) of operating her automobile at a speed no greater than was reasonable and prudent

under the conditions then existing, plaintiff was required to drive at an appropriate reduced speed in approaching the intersection (G. S. 1961 Supp. [now K. S. A. 1967 Supp.] 8-532 [c]). Furthermore, she had the duty of keeping a proper lookout for vehicles and objects in her line of vision which might affect her use of the highway. The law presumes that a driver will see those things which a person would and could see in the exercise of ordinary care. (*Smithson, Executor v. Dunham,* supra; *Jarboe v. Pine,* 189 Kan. 44, 366 P. 2d 783; *Bottenberg Implement Co. v. Sheffield,* 171 Kan. 67, 229 P. 2d 1004; PIK 8.03.)

Contrary to plaintiff's contention, the statutory duties imposed on a driver approaching a favored highway protected by stop signs are for the protection of drivers of vehicles approaching the intersection from the opposite direction as well as those traveling on the favored highway. A careful reading of G. S. 1961 Supp. [now K. S. A.] 8-552 (*b*) in conjunction with G. S. 1949 [now K. S. A.] 8-551 governing vehicles turning left at an intersection, compels the conclusion that the provision regarding the duty of a driver in plaintiff's position to stop and yield the right of way was meant to protect the user of a highway in defendant's position approaching the intersection from the opposite direction and intending to turn left. Our conclusion is supported by *Albin v. Munsell,* 189 Kan. 304, 369 P. 2d 323, where a driver, traveling sixty to sixty-five miles per hour, failed to stop at a stop sign at an intersection and collided with a driver who had approached the intersection from the opposite direction and had stopped at a stop sign and was waiting to turn left.

The only evidence relating to the lights from defendant's automobile was given by Mr. Thornberry, the surviving passenger in the front seat of plaintiff's vehicle. Of course, plaintiff, because of amnesia, could offer no testimony that the lights actually affected her in any way. Thornberry testified that when they were coming down the hill and approaching the intersection he "detected lights" and looked up "right straight into the lights" of defendant's car. He testified, "There were four headlights shining on the car, which would indicate high beams." He also said he did not see the stop sign. Even were we to assume this evidence was sufficient to show defendant's lights affected plaintiff's view of the stop sign and intersection, she would not be excused from obeying the rules of the road previously discussed. Ordinarily, a motorist must correlate his speed with his ability to stop his vehicle within the distance objects can be seen ahead; but this rule is subject to qualification

and exception where there is a sudden change in the motorist's situation not caused by his own failure or neglect. The rule and its exceptions have been discussed most recently in *Newman v. Case,* 196 Kan. 689, 413 P. 2d 1013; *Deemer v. Reichart,* 195 Kan. 232, 404 P. 2d 174; and *Grisamore, Administratrix v. Atchison, T. & S. F. Rly. Co.,* 195 Kan. 16, 403 P. 2d 93, where our numerous decisions on the subject may be found. Mr. Justice Hoch, in discussing the qualifications and exceptions to the rule in *Drennan v. Penn. Casualty Co.,* 162 Kan. 286, 176 P. 2d 522, aptly stated the general rule was intended to apply only to situations which an ordinarily prudent man would, or should, anticipate. As a corollary to that observation, we believe, from a study of the cases, the qualifications and exceptions have been applied only where there has been a sudden change in a driver's situation not brought about by his own failure to exercise ordinary care under the circumstances (*e. g., Winfough v. Tri-State Insurance Co.,* 179 Kan. 525, 297 P. 2d 159). In other words, for a driver to be entitled to the benefit of the blinding-light exception as a factor for consideration, the sudden change in his driving situation must be one that he could not have reasonably anticipated, and he must have otherwise been exercising due care for his own safety.

Under the facts and circumstances disclosed by this record, we are of the opinion plaintiff's conduct in approaching the intersection fell below the standard of a reasonably prudent person, and the fact that her view of the stop sign may have been momentarily impaired by the mailbox, or that she may have been blinded by the lights from defendant's automobile, did not relieve her from her negligence otherwise established as a matter of law.

In order for a plaintiff in a negligence case to be barred from recovery, his negligence must have contributed to and been a proximate cause of the injury. (*Schoof v. Byrd,* 197 Kan. 38, 415 P. 2d 384; *Knape v. Livingston Oil Co.,* 193 Kan. 278, 392 P. 2d 842 [majority and dissenting opinions]; *Albin v. Munsell,* supra; *Holt v. Bills,* 189 Kan. 14, 366 P. 2d 1009, rehearing denied 189 Kan. 261, 368 P. 2d 986; *Hutchens v. McClure,* 176 Kan. 43, 269 P. 2d 473.) Much the same rules applicable in determining the existence of contributory negligence as a matter of law also apply in considering the question of causation. Although proximate cause is ordinarily a question for the jury, it becomes a question of law where all the evidence upon which a party relies is undisputed and susceptible of only one inference. (*Bateman v. Crum,* 186 Kan. 1, 348 P. 2d 639;

*Kendrick v. Atchison, T. & S. F. Rld. Co.,* 182 Kan. 249, 320 P. 2d 1061; *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338; 38 Am. Jur., Negligence § 351; cases cited in 4 Hatcher's Kansas Digest, Negligence § 74; 7A West's Kansas Digest, Negligence § 136[25].) Thus, if the evidence relied on by a plaintiff, viewed in its most favorable light, clearly discloses the injury was the direct result of plaintiff's negligence, or of the concurrent negligence of both the plaintiff and defendant, a question of law as to plaintiff's contributory negligence is properly presented for determination by the court. (*In re Estate of Magie,* 187 Kan. 753, 360 P. 2d 6; *Cooper v. Sorenson,* 182 Kan. 560, 322 P. 2d 748; *McPherson v. Leichhardt,* 181 Kan. 330, 310 P. 2d 941.)

What has already been said about the evidence establishing plaintiff's contributory negligence as a matter of law is equally applicable to the issue of proximate cause. Assuming, as the trial court did, that defendant was negligent, we are of the opinion plaintiff's evidence, viewed most favorably to her, and the physical facts, about which there is no dispute, establish that her own negligence contributed to and was a proximate cause of the collision. We have here a situation where the plaintiff was familiar with the intersection in question and the fact that it was controlled by a stop sign which she was required by law to obey. She was charged with knowledge that she was approaching this particular intersection and in doing so must govern the operation of her vehicle as a reasonably prudent person would under like or similar circumstances. Her avowed intention was that she was on her way back to Independence, which meant that she would make a right turn at the intersection. The evidence is undisputed that she approached and entered the intersection at a speed of approximately fifty to fifty-five miles per hour, which, under the expert testimony, meant she was traveling more than seventy feet per second. The brakes were not applied until she had passed the stop sign and was approximately twelve feet from the intersection proper. She left skid marks of fifty feet that extended well beyond the opposite side of the intersection. There was evidence that when the brakes were locked and the wheels were skidding in this fashion, the automobile would be uncontrollable. The facts just related dispel plaintiff's interesting argument that at the point of collision she "was not violating the law"—that "Her violation, if any, ceased when she passed the stop sign on the east side of Tenth Street, and her

liability, if any, stopped after she crossed Tenth Street." Under the evidence, her negligence could not have ceased, because the physical facts indicate she was unable to regain control in sufficient time to avoid the collision. However negligent the defendant may have been, plaintiff's negligence was a direct and substantial cause of the collision.

In reaching our conclusion that the trial court properly sustained defendant's motion for directed verdict, we have been mindful that every negligence case must be determined on its particular conditions and circumstances in light of general principles of negligence law. (*Drake v. Moore,* 184 Kan. 309, 336 P. 2d 807.) The occasions are extremely rare where a court is justified in taking the case from a jury and deciding the questions of negligence and proximate cause as a matter of law; but when under the facts, as here, those issues are so clearly established that reasonable minds could not differ, it becomes the duty of the court to make the determination.

Plaintiff also complains the trial court refused to allow her to show that the Montgomery county officials changed the position of the stop sign and erected warning signs subsequent to the accident. Plaintiff sought to justify the admission of such evidence on the basis it would tend to show the dangerous condition which existed at the intersection on the morning in question and thus excuse her failure to stop at the sign. We believe no reversible error occurred in the exclusion of such evidence. For the purpose offered, it was irrelevant, in that there was ample evidence, including photographs showing the intersection and the stop sign as they actually existed at the time of the collision. We have already pointed out that the fact plaintiff's view of the sign may have been momentarily obscured did not excuse her from exercising due care in approaching the intersection under the circumstances then existing.

Other points have been raised and those pertinent to the controlling question on appeal have been examined and found to be completely unmeritorious.

The judgment of the lower court sustaining defendant's motion for directed verdict is affirmed.

FATZER, J., dissenting: In my opinion, the court has not correctly disposed of this case by affirming the district court's order sustaining the defendant's motion for a directed verdict.

In my judgment, the court overemphasizes the plaintiff's familiarity with the intersection in question. The evidence showed that she was familiar with and had driven Tenth Street, but she was unfamiliar with the Poor Farm Road, and where it intersected Tenth Street. Moreover, there was evidence of the blinding headlights of the defendant's automobile and of obstructions to the stop sign by a large mailbox. The legal questions in this case were aptly stated by Mr. Chief Justice Harvey in *Lawrence v. Kansas Power & Light Co.*, 167 Kan. 45, 204 P. 2d 752, where it was said:

"The legal questions here involved are so well settled in our law that they need not be labored. The actions were ones at common law in which plaintiffs sought damages alleged to have resulted from defendant's negligence, and defendant had pleaded contributory negligence of the plaintiffs. These are the kinds of actions in which each party is entitled to a trial by jury as a matter of right. They should not be converted into trials by the court. Negligence is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged has been established. Before the court should make such a holding the evidence should be so clear that reasonable minds, considering it, could have but one opinion, namely, that the party was negligent. In these cases we think the contributory negligence of plaintiffs was clearly a question of fact for the jury . . ." (l. c. 49.)

If this case were reversed and a new trial ordered, under the evidence the jury might very well find that the negligence of the defendant was the proximate cause of the plaintiff's injuries.

I would reverse the district court's order sustaining the motion for a directed verdict.