(670 P.2d 67)
No. 54,456

RUBY L. KLINZMANN, *Plaintiff-Appellee,* v. TERRY L. BEALE, YOUNG AND COOPER TRUCKING CO., and UNITED STATES FIDELITY AND GUARANTY COMPANY, *Defendants-Appellants,* and PHILLIPS COUNTY, KANSAS, and LINDA K. MCDOWELL, *Additional Party Defendants.* Consolidated with LINDA K. MCDOWELL, *Plaintiff-Appellee,* v. TERRY L. BEALE, YOUNG AND COOPER TRUCKING CO., and UNITED STATES FIDELITY AND GUARANTY COMPANY, *Defendants-Appellants,* and PHILLIPS COUNTY, KANSAS, *Additional Party Defendant.*

Opinion filed October 6, 1983.

*Alan L. Rupe* and *Arthur S. Chalmers,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellants.

*Casey R. Law,* of Great Bend, and *Hal D. Meltzer,* of Wichita, both of Turner & Boisseau, Chartered, for appellees.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

MEYER, J.: This personal injury case arises out of a car-truck accident in Phillips County, Kansas. The jury returned a verdict in favor of the plaintiffs-appellees, Linda K. McDowell and Ruby L. Klinzmann (plaintiffs) against defendants-appellants, the truck driver, Terry L. Beale; Beale's employer, Young and Cooper Trucking Co.; and the employer's insurance carrier, United States Fidelity & Guaranty Co. (USF&G) (collectively referred to as defendants). Defendants appeal the jury verdict; plaintiffs cross-appeal the finding of negligence on the part of plaintiff McDowell.

## A. The Appeal

Defendants' first issue is that the court erred in giving the following instruction:

"In your determination of what fault, if any, should be attributed to Phillips County, Kansas, you are instructed that the county has a duty to keep its roadways safe for the traveling public.

"An unsafe condition on a roadway is called a highway defect.

"When a stop sign is not properly placed so that those members of the traveling public who are not familiar with the roadway cannot heed the command on the sign, a defective condition exists in that roadway.

"Fault may be attributed to Phillips County if you find the following:

1. That a defect existed on 19, August, 1978, at the intersection in question.
2. That the County had notice of the defect for more than five (5) days prior to the accident.
3. That the defect contributed to the accident."

This instruction was based on the highway defect statute, K.S.A. 68-301 (Weeks) (repealed, L. 1979, ch. 186, § 33, July 1), which was still in effect at the time of the accident. Defendants maintain that the instruction is erroneous because 68-301 was simply an immunity statute, not one defining negligence, and that the negligence of Phillips County should have been judged by the traditional standard of ordinary and reasonable care.

This issue was firmly resolved in the case of *Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, 582 P.2d 271 (1978). In that case it was held that K.S.A. 68-301 defined negligence per se. If the conditions therein were found to exist, no amount of diligence or due care on the part of the govern-

mental entity could avoid the imposition of liability. Conversely, if those conditions were not all met, no showing of lack of care or diligence could cause liability to be imposed. The statute thus makes a statutory definition of actionable negligence; it is not a mere procedural hurdle to avoid the bar of governmental immunity.

The court in *Thomas* used this rationale to uphold an instruction to the jury that the township's negligence could be compared to that of the other defendants in that case if and only if the conditions of 68-301 were first met. Thus, it was held that the comparative negligence statute (K.S.A. 60-258a) was to be applied in actions pursuant to K.S.A. 68-301. 224 Kan. at 543-547. It seems equally logical that 68-301 should be used as the standard of negligence for the purposes of comparison pursuant to 60-258a. And, on this same subject, see also *Lungstrum v. State Highway Commission,* 177 Kan. 57, Syl. ¶ 4, 276 P.2d 346 (1954); *Payne v. State Highway Comm.,* 136 Kan. 561, 563, 16 P.2d 509 (1932); *Arnold v. Coffey County Comm'rs,* 131 Kan. 343, 291 Pac. 762 (1930); and *Cunningham v. Clay Township,* 69 Kan. 373, 377-78, 76 Pac. 907 (1904).

The instruction was correct; there is no merit to this first issue.

Defendants' second issue is a corollary to their first. They here allege error in the failure to instruct the jury as to common-law duty of the county to exercise reasonable care in the inspection and maintenance of traffic control devices within its purview. What has been said in the discussion of Issue No. 1, above, also dispels any contentions of merit in this issue. To simply reiterate those points briefly, the trial court did instruct the jury that Phillips County had a duty to maintain safe conditions on its roadways. The court couched this duty in the terms of K.S.A. 68-301, which provides the correct legal standard. There was no error in the failure to include an instruction on a common-law duty, as no such duty prevails in light of K.S.A. 68-301.

For their third issue, defendants contend that the court erred in giving the following instruction:

"If the driver of a vehicle approaching a through highway knows of the through character of that highway, the fact that a traffic control device directed toward his use of the roadway is obscured or has been temporarily displaced is immaterial with respect to his negligence in failing to yield the right of way to traffic approaching so close as to constitute a hazard."

It is maintained by defendants that the above instruction impermissibly assumes that the asphalt road on which plaintiffs were driving is and was superior to the gravel road upon which defendant Beale was driving. It is argued that because the stop sign on the south side of the intersection was unquestionably not visible to northbound motorists on the gravel road, the asphalt road thereby lost any superiority it may have otherwise possessed. Thus, it is asserted, the court should have given an instruction on "open" intersections.

The court instructed the jury as follows regarding the definition of "through" highway:

"Through highway means every highway or portion thereof on which vehicular traffic is given preferential right-of-way, and at the entrances to which vehicular traffic from intersecting highways is required by law to yield the right-of-way to vehicles on such highway in obedience to either a stop sign, yield sign or other traffic-control device, when such signs or devices are erected as provided in this act."

This instruction is a correct statement of the law, being taken directly from K.S.A. 8-1475.

Kansas has adopted the rule that once a highway has been designated as a through highway, and traffic control devices have been erected pursuant to that designation, the temporary removal of such devices does not alter the character of that highway vis-a-vis intersecting roads of inferior character.

" 'An arterial highway is not deprived of its character or status because stop signs on an intersecting road are temporarily displaced or otherwise made invisible.

" 'If a motorist knows of the through character of a highway, the presence or absence of warning signs is immaterial as respects his negligence in failing to yield the right-of-way.' " Schenck v. Thompson, 201 Kan. 608, 614, 443 P.2d 298 (1968), quoting from Bell v. Crook, 168 Neb. 685, Syl. ¶¶ 3, 4, 97 N.W.2d 352 (1959).

The court in Schenck also stated:

"Nor will the fact that a stop sign is not in proper position or sufficiently legible to an ordinarily observant person . . . cause the preferred highway to lose its status as such and relieve a motorist approaching and crossing such highway from exercising due care." 204 Kan. at 614-15.

And see also Jones v. McCullough, 148 Kan. 561, 83 P.2d 669 (1938).

The result in Schenck was not altered by the holding in Ellis v. Sketers, 1 Kan. App. 2d 323, 564 P.2d 568, rev. denied 225 Kan.

843 (1977), as defendants contend. In *Ellis,* the holding that mere custom and usage cannot create a through highway was predicated entirely on the fact that traffic control devices *had never been erected* at the intersection there involved. Such is not the situation in the case at bar.

The instruction complained of states correctly the law of Kansas. It is true that the holding in *Schenck* emphasizes the approaching driver's knowledge of the through character of the highway he is approaching, as reason for application of the rule there stated. The instruction given herein, though, does leave it up to the jury to conclude whether defendant Beale had such knowledge. The jury concluded that he did, and there is evidence to support this. First, he had been through the same intersection once on that same day, and had observed a traffic control device on the northwest corner. Additionally, Beale also stated that it was his personal impression, gained from several years as a professional truck driver, that asphalt roads generally take precedence over gravel roads where the two intersect.

The instruction complained of was correct, as was the jury's conclusion based on that instruction and the evidence of record. There is no merit to defendants' third issue.

Defendants' next point of error concerns the admission into evidence of information contained in a letter from defendants' attorney to one Spence Schwien, an adjuster for defendant USF&G. It is argued that this letter contained mental impressions of defendants' counsel and thus should have been protected by the work-product doctrine.

There is no doubt that during discovery each party to a lawsuit may refuse to produce for the other's inspection any "mental impression, conclusions, opinions, or legal theories" of its own attorney. See K.S.A. 60-226(*b*)(3). Defendants contend that disclosure of such work product is also protected at trial. Without delving into whether the discovery provision also amounts to an evidentiary privilege, we will proceed with this discussion under the assumption that such a letter would indeed be inadmissible as work product and/or under the attorney-client privilege, K.S.A. 60-426.

This court has examined the transcript of the pertinent portion of the trial, and would offer the following comments.

Mr. Schwien was called as a witness by defendants' counsel in

an effort to introduce a statement made to Schwien by defendant Beale on December 14, 1978. In this statement, Beale denied seeing any traffic control devices on his first pass through the intersection on the day of the accident. Such a denial would obviously be inconsistent with his sworn statements, both at trial and in deposition, that he had seen a reflective sign of some kind on that occasion. Plaintiffs' counsel objected on the ground that counsel for defendants was attempting to impeach his own client. This objection was overruled.

After the jury had heard Mr. Schwien's tape recording of his conversation with Beale, plaintiffs' attorney continued his cross-examination. Much of counsel's thrust was to portray Schwien as an agent of USF&G (which he was), not an impartial investigator. It was inferred that Schwien might have coaxed Beale into making statements favorable to Schwien's employer. It was also pointed out that the statement was not under oath, nor did the recording represent the totality of the conversation had between Schwien and Beale on that date.

Counsel for plaintiffs then sought to introduce a letter from Mr. Schwien's file, which had been dispatched to Schwien by counsel for defendants on January 31, 1980. Contained in this letter was a synopsis of Beale's deposition testimony, taken on January 15, 1980. Also there contained was a statement by counsel that such testimony was consistent with statements of Beale received by counsel in an interview conducted on August 17, 1979. Counsel for plaintiff desired to use this letter, particularly the last-mentioned statement therein, to show a prior statement by Beale consistent with his sworn testimony.

Defendants' counsel objected to the admission of the letter on the basis of the attorney-client privilege. The court excused the jury and heard arguments of counsel on this objection. The court ruled that Schwien could testify as to his knowledge of such prior statements by Beale, but that no mention could be made of the privileged correspondence which was the source of his knowledge. Thereafter, counsel for plaintiffs elicited testimony from Schwien that he in fact knew of a statement made by Beale in August of 1979 which was consistent with his deposition testimony of January 1980, and with his testimony at trial.

It is the contention of defendants that Mr. Schwien had mis-interpreted the letter, and that, in the interview of Beale con-

ducted on August 17, 1979, there had been no reference what-soever to whether he had observed a traffic control device on his first trip through the intersection. Thus, it is argued, as to that point, Beale's statement of that date was neither consistent nor inconsistent with his later sworn testimony. Counsel for defendants insisted that he himself would have to take the stand to explain the true meaning of his letter to Schwien, thus to show Schwien's misinterpretation of certain statements therein. On this basis, counsel for defendants moved for a mistrial, which motion was denied.

In our opinion, the actions of the trial court should be ap-proved. Beale's testimony at trial and at deposition was inter-nally consistent as regards his observations on his first trip through the intersection. Nevertheless, counsel for defendants put on evidence of a prior statement inconsistent with such testimony, ostensibly to "rehabilitate" his client following "im-peachment" by plaintiffs. On direct examination, defendants demonstrated Schwien's knowledge of a prior inconsistent statement by Beale. Having opened up the area of prior state-ments by Beale which were known to the witness, defendants cannot object that plaintiffs wished to show that Schwien also had knowledge of a prior consistent statement by Beale. The court did all it reasonably could do to protect the attorney-client privilege by its ruling on the motion in limine, which limited plaintiffs to mere testing of the witness' knowledge and disal-lowed any inference to the source of such knowledge, which source was privileged communications.

As for whether a mistrial should have been declared because of the necessity of defendants' counsel testifying, we do not accept defendants' argument. Putting aside for now the rule that the granting of a mistrial is an act within the broad discretion of the trial court, defendants' counsel did not need to testify. Counsel could have effected the same result as would his pro-posed testimony by having his clients waive the attorney-client privilege, and then asking defendant Beale whether there had been any mention in the interview of August 17, 1979, of a sign on the north side of the intersection. Given that counsel for defendants could have so simply avoided the alleged grounds for mistrial, the court did not err in refusing to grant one. There is no merit to defendants' fourth issue.

As their final point on appeal, defendants allege reversible error in the comments by plaintiffs' counsel relative to USF&G's position as insurer of the other defendants, and in the trial court's refusal to grant an order in limine absolutely forbidding any mention of insurance at any point in the proceedings (including voir dire).

K.S.A. 60-454 provides:

"Evidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible as tending to prove negligence or other wrongdoing."

The trial court recognized this statutory rule of evidence when it instructed the jury as follows:

"The fact that the defendant U.S.F.&G. filed a certificate of insurance with the Kansas Corporation Commission covering the operation of all motor vehicles operated by the defendant Young and Cooper Trucking Co. may not be considered by you to prove negligence in your determination of fault in this case."

Kansas law has long adhered to a strict rule absolutely forbidding even the mention of a defendant's insurance, and declaring such mention to be inherently prejudicial.

"The long-standing rule in Kansas is that the mere mention of defendant's insurance in an automobile collision case is reversible error. *Smith v. Blakey, Administrator,* 213 Kan. 91, 515 P.2d 1062 (1973); *Bott v. Wendler,* 203 Kan. 212, 453 P.2d 100 (1969)." *White v. Goodville Mut. Cas. Co.,* 226 Kan. 191, 192, 596 P.2d 1229 (1979).

And see also *Borth v. Borth,* 221 Kan. 494, 561 P.2d 408 (1977); and *Kelty v. Best Cabs, Inc.,* 206 Kan. 654, 481 P.2d 980 (1971).

This strict rule must be considered somewhat tempered, however, by the provisions of K.S.A. 66-1,128. This statute, which requires all motor carriers operating in this state to file certificates of insurance with the state corporation commission, has been held to allow direct suit against the motor carrier's insurer. See *Dunn v. Jones,* 143 Kan. 218, 53 P.2d 918 (1936). It was under K.S.A. 66-1,128 that USF&G was made a party defendant in the case at bar.

Where an insurance company is party to a lawsuit, it is impossible to completely insulate the jury from knowledge of insurance. Thus, it would seem logical that merely mentioning the insurance relationship between defendants in an action under 66-1,128 should not hold the same inherent prejudice as does the mention of insurance in an action where the insurer is not, and

cannot legally be, a party. In the instant case, the jury was obviously aware of USF&G's role as insurer of the other defendants. The following jury instruction reflects a written stipulation by the parties herein:

"Defendant United States Fidelity and Guaranty Company filed a certificate of insurance with the Kansas Corporation Commission covering the operation of all motor vehicles operated by the defendant Young and Cooper Trucking Co."

Examining the comments complained of, plaintiffs' counsel stated in substance that while only USF&G would have to respond in payment of damages, it was the negligence of Beale (as imputed to Young and Cooper Trucking Co.) which must be the basis for the award. He also made comments which implied that USF&G was doing everything in its power to avoid the imposition of any liability against it. To all these comments, defendants interposed but one objection, that being the somewhat vague statement that plaintiffs' counsel was referring to "matters not in evidence."

In *Masson v. Kansas City Power & Light Co.*, 7 Kan. App. 2d 344, 350, 642 P.d 113, *rev. denied* 231 Kan. 801 (1982), the court stated:

"In assessing whether improper argument amounts to reversible error Kansas courts have always given great weight to the presence or absence of an objection and the curative effect of a well-phrased admonition to the jury."

As noted above, defendants' objection was less than specific; furthermore, it was interposed well after many of the comments now complained of had already been made, and was not renewed when comments in the same vein were later made. Additionally, the trial court instructed the jury that USF&G's position as insurer must not influence its findings as to negligence and fault. Therefore, we conclude that the comments of plaintiffs' counsel, which might well constitute reversible error in a "standard" personal injury case, do not rise to that level in a case such as this where the insurer is a party to the action. Defendants have demonstrated no error by their fifth issue.

Having considered all the points raised by defendants, this court finds no merit to their appeal.

### B. The Cross-appeal

In their cross-appeal, plaintiffs raise only one issue—whether, under the law of Kansas and the evidence in this case, the jury

verdict finding plaintiff McDowell 30 percent at fault can be sustained.

The scope of appellate review over an issue such as this is severely limited.

"When a verdict is attacked on the ground it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful party below, will support the verdict this court should not intervene." *Timsah v. General Motors Corp.,* 225 Kan. 305, Syl. ¶ 1, 591 P.2d 154 (1979).

From the verdict rendered, it can be assumed that the jury found plaintiffs were on the superior, through highway; thus, they had the right-of-way over defendants' vehicle.

Generally, under Kansas law, the driver of a vehicle having the right-of-way may assume that other vehicles will respect that right and will comply with the obligations imposed on them. *Jarboe v. Pine,* 189 Kan. 44, 366 P.2d 783 (1961). However, the dominant driver is not thereby absolved of his own negligence, but must operate his vehicle in such a manner as to observe ordinary care and with caution, so as to avoid inflicting injuries or receiving them. *Morris v. Hoesch,* 204 Kan. 735, 466 P.2d 272 (1970).

The trial court recognized these long-standing principles when it gave the following instruction to the jury:

"Persons using a public street or highway have the right to assume that each will obey the law. Each is entitled to rely on this assumption until he has knowledge to the contrary."

Having made a careful examination of the record herein, we conclude that while the evidence relative to plaintiff McDowell's negligence was not overwhelming, it is nevertheless sufficient to substantiate the jury finding of 30 percent negligence on her part. It is not so insufficient that we can say as a matter of law that the jury reached the wrong conclusion.

Affirmed.