No. 44,063

JEREMIAH and ELLA VAN MOL, *Appellees*, v. THE URBAN RENEWAL AGENCY OF KANSAS CITY, KANSAS, and THE CITY OF KANSAS CITY, KANSAS, *Appellants*.

(402 P. 2d 320)

Opinion filed May 15, 1965.

*John K. Dear*, of Kansas City, argued the cause, and *David W. Carson, Ernest N. Yarnevich, John William Mahoney, Joseph T. Carey, John H. Fields* and *C. W. Brenneisen, Jr.*, all of Kansas City, were with him on the briefs for the appellants.

*Charles S. Schnider*, of Kansas City, argued the cause, and *Joseph Cohen, John E. Shamberg, Joseph P. Jenkins, Barton P. Cohen, Jacob F. May, Jr., Frederick K. Cross, Norma Braly* and *Thomas H. Finigan*, all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from the verdict and judgment rendered in the district court on an appeal from the appraisers' award in a condemnation case.

The appellees, Jeremiah Van Mol and Ella, his wife, owned twenty-four and one-half acres of land located in Wyandotte County, Kansas. The tract fronted on 34th Street on the west and Steele Road on the south. Four and one-half acres of the tract consisted of a building site on which were located four homes belonging to the landowners and their children, and dairy buildings, barns and a garage used in connection with the operations of a dairy. The north and adjoining twenty acres consisted of pasture land on which the dairy cattle were grazed and exercised. The appellants, the Urban Renewal Agency and the City of Kansas City, Kansas, acquired the twenty acres of pasture land by condemnation on June 1, 1962, for

urban renewal purposes. Only the four and one-half acres with the buildings above described were left to the landowners.

The landowners were dissatisfied with the appraisers' award and appealed to the District Court of Wyandotte County, Kansas. The condemners were dissatisfied with the verdict of the jury in its award to the landowners and have appealed to this court.

The appellants first contend that the trial court erroneously instructed the jury as to market value or its absence.

The jury was instructed as follows:

"In determining the reasonable market value, the jury is to consider the value of said property to its owners for their special purposes; and an owner is not required to make any pecuniary sacrifices. The owner is entitled to whatever the property is worth to him or to anyone else for any purpose to which it is adapted; this use or purpose must be real and not merely speculative or imaginary. If a particular and peculiar mode of using the land has been utilized by the landowner, he must be compensated for loss suffered by him, and it is the value which he has, and of which he is deprived, which must be made good by compensation."

The appellant suggests:

"This instruction actually advises the jury that no matter what the reasonable market value of the premises might be; no matter what the witnesses for the condemning authority feel that the property is worth, they must give the property owners what they feel that the property is worth."

We are forced to agree with appellant's suggestion.

The instruction fails to inform the jury that the instruction is applicable in the absence of market value, it being contended by the landowners that there was no similar property so used from which market value could be determined. The trial court was no doubt trying to follow the rule laid down in *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 332, P. 2d 539 where we stated at page 779 as follows:

"*The absence of market value, in the sense that there is a lack of evidence of comparable sales, does not prevent recovery by the owner in the event of condemnation.* It occasionally happens that a parcel of real estate or a leasehold interest taken by eminent domain is of such a nature, or is held or has been improved in such a manner, that, while it serves a useful purpose to its owner, he would be unable to sell it at anything like its real value. Where the usual means of ascertaining market value are lacking, or other means must from necessity of the case be resorted to, it is proper to determine the market value by considering the intrinsic value of the property, and its value to the owners for their special purposes. The owner of the property taken is not required under such circumstances to make any pecuniary sacrifices. He is entitled to whatever the property is worth to him, or anyone else, for any

purpose to which it is adapted. These special uses or purposes to which the property is adapted must be real—founded upon facts capable of proof—and not merely speculative or imaginary. If the owner has adopted a peculiar mode of using the land, by which he derives profit, and he is to be deprived of that use, justice requires that he be compensated for the loss to himself. It is the value which he has, and of which he is deprived, which must be made good by compensation. (4 Nicols on Eminent Domain [3rd Ed.], § 12.32, p. 133.)" (Emphasis supplied.)

The court also overlooked the following statement in the Eisenring case which was the meat of the rule:

*"In the absence of market value, because the special type of property is not commonly bought and sold, resort may be had to the testimony of more specialized experts.* The value of property for a special use to which it is adapted or put may be shown by persons familiar with such use, even though they are not familiar with land values generally. If a witness, by reason of. his skill, learning or technical training, understands the adaptability of the lands in question for a particular purpose and the demand for land for such purpose, he may state the market value of the land. (See 5 Nichols on Eminent Domain [3rd Ed.], § 18.41 [3], p. 160; and authorities accumulated therein.)" (p. 779. Emphasis supplied.)

The rule is not to be used in "determining the reasonable market value" as stated by the lower court, but it is to be used in the "absence of market value to determine reasonable value."

The appellants next contend that the court erred in instructing the jury as to the manner in which they should arrive at a verdict.

The court gave the following instruction:

"In arriving at your verdict in this case it is suggested that you:

"First: find the total value of the property, the 24½ acres, as of immediately before June 1, 1962;

"Second: find the total value of the property, the 24½ acres, as of immediately after June 1, 1962;

"Third: Subtract number two from number one, giving the value of the property taken;

"Fourth: that you find the damage to the remainder of the property not taken, if any you find;

"Fifth: then add numbers 3 and 4 to determine the amount of damage assessed against the Urban Renewal Agency in favor of the landowner."

We must concede that it is quite impossible to determine what was meant by the instruction and the result that would have been reached had it been followed literally.

The first factor, finding the total value of all the property immediately before the taking, could have been proper. However, the second factor, finding the value of all the property immediately

after the taking, was meaningless and when subtracted from the first factor could not possibly have given the value of the property taken.

The appellants further contend that the trial court erred in the form of verdict submitted to the jury.

The form of verdict submitted to the jury, without the dollar amounts, was as follows:

| | | |
|---|---|---:|
| "1) | Total value of property before the taking: | $165,381.00 |
| "2) | Total value of property after the taking: | $122,381.00 |
| "3) | Value of land and improvements taken: | $ 43,000.00 |
| "4) | Damage to remainder not taken: | $ 25,381.00 |
| "5) | Total damages assessed: | $ 68,381.00" |

The form of verdict is subject to the same criticism as was the instruction just discussed.

The appellee suggests that the figures and calculations used by the jury indicate that it was not confused by the instructions; that it did arrive at a proper verdict, and therefore the verdict and judgment should not be disturbed on appeal.

We do not believe that it can be said as a matter of law that the jury was neither influenced nor confused by the instructions. There was nothing else to guide them unless they used their independent knowledge of the law of eminent domain on values.

Appellees call our attention to the rule that a verdict will not be set aside on the grounds that an instruction might have been more specific if the entire record shows that the jury was not misled. (*Schuette v. Ross*, 164 Kan. 432, 190 P. 2d 198.)

We do not believe the rule is applicable here. We are considering an instruction which was erroneous. The jury could not have arrived at a proper verdict unless it completely ignored the instruction and form of verdict and made its own determination of the law.

An incorrect instruction must be presumed prejudicial unless the contrary is clearly shown. An erroneous instruction, on a material issue such as we have before us, requires a reversal. (*Jenkins v. United States Fire Ins. Co.*, 185 Kan. 665, 347 P. 2d 417; *Paph v. Tri-State Hotel Co.*, 188 Kan. 76, 360 P. 2d 1055; *Cagle Limestone Co. v. Kansas Power & Light Co.*, 190 Kan. 544, 376 P. 2d 809; *Allen v. Ellis*, 191 Kan. 311, 380 P. 2d 408.)

The judgment is reversed with instructions to grant a new trial.

APPROVED BY THE COURT.