No. 46,040

RAYMOND P. DAUGHARTHY, *Appellee,* v. DANA BENNETT, *Appellant.*

(486 P. 2d 845)

Opinion filed July 16, 1971.

*R. Michael Latimer,* of Ottawa, argued the cause, and *Richard O. Skoog,* of Ottawa, was with him on the brief for the appellant.

*Clarence H. Wood,* of Kansas City, argued the cause, and *Claude L. Rice* and *James L. Baska,* both of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This appeal follows a trial which resulted after a two car accident at an intersection in the city of Ottawa, Kansas.

The plaintiff, Raymond P. Daugharthy, was awarded a jury verdict of $10,000 and the defendant, Dana Bennett, appeals from the judgment. We will continue to refer to the parties as plaintiff and defendant.

The accident occurred in the intersection of 8th and Hickory

Streets. There is no "stop" or "yield" sign at this intersection. A greenhouse is located on the southeast corner and it limits vision diagonally. Plaintiff was traveling east on 8th Street. Defendant was traveling north on Hickory Street. A "slow" sign had been placed on the south side of 8th Street just west of the pedestrian crosswalk along the west side of Hickory Street. Both drivers were familiar with this intersection and with the location of the slow sign and of the greenhouse. The accident occurred at eight o'clock in the morning on September 25, 1967. The weather was clear. Both streets were paved with brick and they were dry.

The plaintiff testified he was traveling east on 8th Street at a speed of from 15 to 20 miles per hour. The maximum speed was 30 miles per hour. Just before entering the intersection he looked to the right and then to the left. He saw no vehicles and proceeded into the intersection. He heard the squealing of tires on his right, applied his brakes and was hit by defendant's car.

The point of impact was in the southwest quadrant of the intersection. Plaintiff's car had not yet reached the center line of Hickory Street. The defendant's car was traveling in the left lane of Hickory Street as it entered the intersection. The front of defendant's car hit the right side of plaintiff's car. After impact plaintiff's car traveled 53 feet and ended up over the curbing at the northeast corner of the intersection. Defendant's car stopped on impact and rolled a few feet backwards toward the curbing at the southwest corner.

The city police officer who investigated the accident testified that defendant's vehicle left 54 feet of tire marks on the pavement before reaching the point of impact. Plaintiff's vehicle left no tire marks before reaching the point of impact. The officer had no opinion on the speeds of these vehicles.

The defendant testified he was on his way to school. He had picked up one friend and was on his way to pick up another. He was 16 years of age at the time of this accident. Before reaching the intersection he had come upon another car occupying the right lane of Hickory Street. He then turned into the left lane, passed the parked car and continued for some distance in the left lane before seeing plaintiff's car. He applied his brakes but was unable to stop before hitting plaintiff's vehicle. It appeared to defendant that plaintiff increased his speed on entering the intersection.

A passenger in defendant's car testified they were traveling from

25 to 30 miles per hour. The maximum speed limit was 30 miles per hour.

Defendant raises two points of error on appeal. First, he says the court erred in failing to sustain his motion for a directed verdict since plaintiff was contributorily negligent as a matter of law; and second, the trial court erred in refusing to give certain requested instructions. Both claims of error relate to the duties alleged to have been imposed upon plaintiff by the "slow" sign located on 8th Street.

The substance of defendant's contentions are contained in two requested instructions which the court refused. These instructions read:

"The laws of Kansas provide that preferential right of way at an intersection may be indicated by a 'slow' sign. The driver of a vehicle approaching a 'slow' sign shall slow down to a speed reasonable for the existing condition, or shall stop if necessary, and shall yield the right of way to any vehicle in the intersection or approaching on another highway so closely as to constitute immediate hazard. The driver having so yielded may proceed, and the driver of all other vehicles approaching the intersection should yield to the vehicle so proceeding.

"The Kansas law states further that if a driver is involved in a collision with a vehicle in the intersection after driving past a 'slow' sign without stopping, such collision shall be deemed prima facie evidence of his failure to yield the right of way. By 'prima facie evidence' is meant a permissible presumption which, however, is not conclusive, but subject to being rebutted or explained. In the absence of contrary evidence, it will support an affirmative finding on the issue involved."

All standard instructions were given to the jury on the law applicable to accident cases at uncontrolled intersections.

Defendant concedes he can find no statute in Kansas which relates to the duties imposed upon a motorist by a "slow" sign. He argues that those duties should be and are the same as those imposed by a "yield" sign.

Let us examine pertinent provisions of the Kansas Act Regulating Traffic on Highways (K. S. A. 8-501 *et seq.*).

A motorist shall not drive a vehicle at a speed greater than is reasonable and prudent under the conditions then existing. (K. S. A. 8-532 [a].) When approaching and crossing an uncontrolled intersection a motorist shall drive at an appropriate reduced speed. (K. S. A. 8-532 [c].)

K. S. A. 8-552 (now 1970 Supp.) provides:

"(a) Preferential right of way at an intersection may be indicated by stop

signs or yield signs as authorized in section 8-568 of the General Statutes of 1949 as amended [now K. S. A.].

"(b) [This section relates to a stop intersection and is not pertinent.]

"(c) The driver of a vehicle . . . approaching a yield sign shall in obedience to such sign slow down to a speed reasonable for the existing conditions, or shall stop if necessary . . . and shall yield the right of way . . . to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard. Said driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection shall yield to the vehicle so proceeding: *Provided, however,* That if such driver is involved in a collision with a . . . vehicle in the intersection after driving past a yield sign without stopping, such collision shall be deemed prima facie evidence of his failure to yield right of way."

We note that under paragraph (a) of this statute preferential right-of-ways are indicated by "stop" signs and by "yield" signs. "Slow" signs are not included.

The manual on uniform traffic control devices adopted by the state highway commission makes no reference to "slow" signs. We find no mention of such a sign in the Kansas statutes and none in the regulations promulgated by the commission. (See Kansas Administrative Regulations, 36-10-1.)

Local authorities are authorized by K. S. A. 8-568 to erect "stop" signs and "yield" signs on highways under their jurisdiction to indicate preferential right-of-ways at. intersections. The consequences for failing to stop at such an intersection are set forth in K. S. A. 8-552 (c) and any collision resulting after failure to stop shall be deemed prima facie evidence of failure to yield right-of-way.

The duties of a driver on approaching a "yield" intersection were recently examined by this court in *Harbaugh v. Darr,* 200 Kan. 610, 438 P. 2d 74.

The defendant would have us equate the duties of a motorist on approaching a "slow" sign with those of a motorist approaching a "yield" sign. He cites no Kansas cases.

In several jurisdictions we find specific statutes pertaining to "slow" signs and to the care required of a driver on approaching such a sign. Cases from these jurisdictions are not persuasive in view of their statutes. The subject is explored in the annotation appearing in 3 A. L. R. 3rd § 5, p. 518.

The case of *In re Estate of Magie,* 187 Kan. 753, 360 P. 2d 6, cited by defendant, is not helpful for the intersection involved in *Magie* was controlled by three consecutive signs, a "slow" sign, a "T" intersection sign and a "yield" right-of-way sign.

The duties and obligations imposed by statute upon a motorist entering a "stop" or a "yield" intersection do not apply in the case of a motorist approaching or entering an intersection after passing a "slow" sign. A "slow" sign is generally considered to be a warning that some special hazard exists ahead by reason of highway conditions. It is a warning to reduce speed if traveling at or near the maximum speed limit and to proceed with care. (In the present case plaintiff was driving 15 to 20 miles per hour in a 30 mile per hour zone.) It may warn of various highway hazards including but not limited to intersections, curves, hills and rough road conditions. It is used to warn a motorist of various highway conditions which make it hazardous to continue traveling at the maximum speed limit allowed. It may be placed to warn of a multitude of hazards. In Kansas its use is not authorized by statute to establish a preferential right-of-way and it is not suited by custom or usage for that purpose. We do not know the particular highway hazard to which the "slow" sign in the present case referred. It may have been placed to warn of the hazard at the intersection resulting from the location of the greenhouse. It may have been placed to warn of the hazard of a dip or depression in the street which traffic encounters before entering the intersection of Hickory Street. In any event a "slow" sign is not recognized by statute to establish a preferential right-of-way at an intersection.

Since the use of a "slow" sign cannot establish a preferential right-of-way it follows that such a sign places no greater duty upon a motorist than is required by K. S. A. 8-532 (c) on approaching any uncontrolled intersection. That duty is to drive at an appropriate reduced speed when approaching and crossing the intersection.

Therefore under the facts of this case both drivers had the same duty of care. The requested instructions were properly refused.

We turn next to defendant's contention the court erred in failing to sustain his motion for a directed verdict since plaintiff was contributorily negligent as a matter of law.

What has been said largely disposes of the basis for this contention. Contributory negligence is generally a question of fact to be determined by the jury under the circumstances of each particular case and it is not a question of law to be determined by the court. (*Newman v. Case*, 196 Kan. 689, 413 P. 2d 1013; *Bingham v. Hillcrest Bowl, Inc.*, 199 Kan. 40, Syl. ¶ 2, 427 P. 2d 591; *Smithson*,

*Executor v. Dunham,* 201 Kan. 455, 441 P. 2d 823; *Kirsch v. Dondlinger & Sons Construction Co., Inc.,* 206 Kan. 701, 482 P. 2d 10.) Following the rule set forth in the foregoing cases we cannot say as a matter of law under the facts of this case that plaintiff failed to use reasonable care as he approached and entered the intersection. The jury fairly decided that question.

One final matter should be mentioned before concluding this opinion. Since defendant filed no motion for judgment notwithstanding the verdict much of plaintiff's brief and defendant's reply brief is devoted to procedural questions which would have arisen in event of a reversal. What has been said in this opinion requires an affirmance. Anything we might say as to the procedural questions briefed by the parties would be dicta since it would reach beyond the requirements of the case and have no effect upon the ultimate rights of the parties. See *Kendig v. Kretsinger,* 197 Kan. 186, 415 P. 2d 250 and *Taylor v. State,* 198 Kan. 648, 426 P. 2d 159. Accordingly we decline to answer the procedural questions posed in the briefs.

The judgment is affirmed.