(564 P 2d 568)
No. 48,258

HELEN M. ELLIS, *Appellee*, v. MICHAEL L. SKETERS, a minor, by and through his father and next friend, Bill G. Sketers, *Appellant*.

Petition for review denied July 11, 1977.

Opinion filed May 20, 1977.

A. J. *Wachter* of Wilbert, Lassman, Toburen & Wachter, of Pittsburg, for the appellant.

*Charles F. Forsyth* of Fleming & Forsyth, of Erie, for the appellee.

ABBOTT, P.J., FOTH and SPENCER, JJ.

SPENCER, J.: In an action to recover for personal injuries and property damages sustained in a car-truck collision at a "T" intersection, the jury returned its general verdict for the defendant and judgment was entered accordingly. Plaintiff filed a mo-

tion for new trial and renewed her motion for a directed verdict. The trial court sustained the latter, set aside the judgment in favor of the defendant, entered judgment for the plaintiff on the issue of liability, and ordered a new trial on the issue of damages. It was subsequently stipulated that if the case were to be tried to a jury solely on the issue of damages, the jury would return a verdict for the sum of $17,500. On this basis, the court entered judgment in favor of the plaintiff for that amount and the defendant has appealed.

On August 16, 1973, a pickup truck then being driven by the defendant in a southerly direction on 35th Street, and an automobile then being driven by the plaintiff in a westerly direction on Southern Street, collided at the intersection of those streets in the city of Parsons, Kansas. That intersection is a "T" intersection in that 35th Street "dead-ends" at Southern. Neither street had any type of traffic control device at the time of the accident, nor had there been any such device at that location for some eleven years prior to that time. Defendant was beginning a left turn on 35th Street in order to proceed east on Southern. He stated that he was traveling five to ten miles per hour as he entered the intersection, and that he did not see the plaintiff's automobile until he had entered the intersection; that he was familiar with Southern Street in that he had traveled it on several occasions, and that he had never stopped for traffic from 35th; that traffic on Southern goes right by 35th Street and that he did not stop for Southern when turning from 35th on this occasion because he knew there wasn't much traffic and he didn't see any dust. Other evidence was to the effect that traffic on Southern does not stop for 35th Street, and the investigating officer testified that, as far as he knew, Southern was a through street at this point. The city engineer also testified that Southern at this intersection had been designated an arterial street in the comprehensive development plan for the city of Parsons. There was evidence also that, at the time the defendant's vehicle entered the intersection, the plaintiff's vehicle was approximately thirty-five feet east of the intersection and traveling at about fifty miles per hour. Plaintiff testified that she did not see the defendant's vehicle until immediately before the impact. The only skidmarks found were those made by the defendant's vehicle after the impact. During the trial the jury was allowed to view the scene of the accident and there

was evidence from which the jury might conclude that the view from a point east of the intersection on Southern to 35th was unobstructed. The court instructed the jury that at the time and place, and with the vehicles involved in this case, any speed in excess of forty-five miles per hour on Southern Street was unlawful, and there was no objection to that instruction.

In granting the motion for a directed verdict, the trial court prefaced its ruling in part as follows:

"I am not satisfied with the verdict by any means, and I think that possibly this is a case that our statutes do not cover. My whole thinking in this case is that the cause of the accident was the negligence of the defendant, and I submitted it to the jury under the instructions that I felt were proper, but I have the feeling that instructing that this is an open intersection, which the instruction I gave follows the open intersection instruction; that is, if both parties enter the intersection at the same time, then the one on the right has the right of way.

"I don't feel these instructions really cover this case, Mr. Wachter. I feel under all the evidence in the case that Southern Street is a through street. Every witness that testified, testified that Southern Street was a through street, and the physical evidence shows that Southern Street is a through street.

"The facts were that the defendant knew Southern Street was a through street and had been there before. He was acquainted with this intersection. . . ."

and concluded by sustaining the motion for a directed verdict on the issue of liability and with a factual finding that the defendant was negligent and the plaintiff was free from negligence.

In their briefs and arguments before this court, the parties concede that the "T" intersection here involved is an intersection within the meaning of and governed by K.S.A. 1973 Supp. 8-550, then in effect, which provided:

"(a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.

"(b) When two (2) vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

"(c) The right-of-way rules declared in sub-section (a) and (b) of this section are modified at through highways and otherwise as hereinafter stated in this article."

Subsections (b) and (c) of the foregoing are now K.S.A. 8-1526. [For definition of "intersection," see K.S.A. 1973 Supp. 8-501, now K.S.A. 8-1428 (a); see also Annotation at 7 A.L.R. 3d 1204, Sec. 10, p. 1221.]

Plaintiff argues that K.S.A. 1973 Supp. 8-552 (a), now K.S.A. 8-1528 (a), which provides:

"Preferential right-of-way at an intersection *may be* indicated by stop signs or yield signs as authorized in K.S.A. 8-568." (Emphasis added.)

does not require the placing of stop or yield signs at Southern Street in order to constitute it a through highway, and accordingly, the right-of-way rules declared in subsections (*a*) and (*b*) of K.S.A. 1973 Supp. 8-550, supra, are modified and the trial court erred in its instruction No. 7 to the jury, which was in part as follows:

"The laws of Kansas provide that the driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. When two vehicles enter an intersection from different highways at the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. Persons using a public street or highway have the right to assume that each will obey the law. Each is entitled to rely on this assumption until he has knowledge to the contrary."

A through highway as defined by K.S.A. 1973 Supp. 8-501, in substance the same as K.S.A. 8-1475, is one "to which vehicular traffic from intersecting highways is required by law to yield right-of-way . . . in obedience to either a stop sign or a yield sign, when such signs are erected as provided in this act."

In *Daugharthy v. Bennett,* 207 Kan. 728, 486 P. 2d 845, the issue was whether a "slow" sign could provide preferential right-of-way to the street it protected. The court held that it could not, noting that K.S.A. 8-552 (*a*) provided only for stop signs or yield signs as indicators of preferential right-of-way. The court went on to note that in the absence of a stop or yield sign the duty of both drivers approaching or crossing an uncontrolled intersection is to drive at an appropriate reduced speed. (207 Kan. at 732.)

All are in agreement that there were neither stop nor yield signs erected on either Southern or 35th Streets at this intersection. It appears that the trial court based its conclusion on the evidence that Southern was considered a through street by the investigating officer and the city engineer, as well as on the testimony of the defendant. In the case of *Wood v. Melton,* 179 Kan. 128, 293 P. 2d 252, the court considered a claim by a defendant in an intersection collision case that there was a recognized custom, practice and usage known to the plaintiff that cars traveling a particular north-south road would stop and yield to any traffic on

the east-west road on which defendant was traveling. The court considered the right-of-way statute, which the claim was advanced to defeat, and said:

"It is well settled by the law of this state, and generally, that the alleged custom, practice and usage which is contrary to the existing law cannot be used either to establish or defeat an action and evidence thereof cannot be received." (179 Kan. at 132-133.)

It was held that the trial court had been correct in striking allegations of such custom from the answer and cross-petition.

The fact that Southern may have been designated an "arterial" street by the city of Parsons and considered as such by others who testified in this cause cannot be allowed to defeat the application of the right-of-way statute in the absence of stop or yield signs placed at that intersection to protect traffic on Southern from traffic on 35th.

Plaintiff directs attention to the provisions of K.S.A. 1973 Supp. 8-551, now K.S.A. 8-1527, which provides:

"The driver of a vehicle intending to turn to the left within an intersection or into any alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

She argues that since the defendant admitted that he was turning to the left at the "T" intersection, he was required to yield the right-of-way to the plaintiff's vehicle. Since the plaintiff was approaching this intersection from the east and the defendant entered the intersection from the north, it is obvious that the vehicles were not approaching from the "opposite" direction and the provisions of this statute do not apply. It is stated in 7 Am. Jur. 2d, Automobiles and Highway Traffic, Sec. 200, p. 751, that:

"Under a statute giving the right of way to vehicles approaching an intersection from the right, a vehicle approaching an intersection from the left is under the duty of yielding to a vehicle approaching from the right which reaches the intersection at the same time or slightly in advance of the vehicle on the left, intending to make a right-hand turn into the intersecting street to proceed in the same direction as the vehicle approaching from the left, or intending to make a left-hand turn into the intersecting street."

We hold that the provisions of the right-of-way statute (K.S.A. 1973 Supp. 8-550, now K.S.A. 8-1526) were applicable in this case and that portion of instruction No. 7 hereinbefore referred to, and which followed PIK Civil 8.27, was properly given.

Defendant argues that the trial court erred in sustaining the motion for a directed verdict and in making the factual finding that defendant was negligent and plaintiff was free from negligence after the jury had returned a verdict for the defendant. A trial judge may grant a motion for a directed verdict under K.S.A. 60-250. In the case of *Simpson v. Davis*, 219 Kan. 584, 549 P. 2d 950, it was stated:

"In ruling on a motion for a directed verdict pursuant to K.S.A.60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and *where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury.* The same basic rule governs appellate review of a motion for a directed verdict." (219 Kan. 584, Syl. 3.) (Emphasis added.)

In concluding that the right-of-way instruction as given was proper, we must necessarily conclude that the defendant had the right-of-way. This fact alone, however, is not determinative of the negligence of the parties. The right-of-way at an intersection is not absolute but relative, and its main purpose is to demand care of motorists commensurate with the danger of collision. (*Green v. Higbee*, 176 Kan. 596, 272 P. 2d 1084.) In *Jarboe v. Pine*, 189 Kan. 44, 366 P. 2d 783, the rule is stated:

"The driver of a motor vehicle upon a public street or highway, even though he be in law the favored driver, or the driver with the right of way, and even though he has the right to assume others traveling on the public street or highway will comply with the obligation imposed upon them, is not absolved of the consequence of his own independent negligent acts. He is required to regulate his use of the public street or highway by the observance of ordinary care and caution to avoid receiving an injury or inflicting an injury upon another. He has a duty to look ahead and see what there may be within his view which may affect his use of such street or highway and to keep a lookout for other users of such street or highway, and he is in law presumed to have seen and heard that which he could have seen and heard had he kept a proper lookout and exercised ordinary care and caution. His failure to use that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances is negligence as a matter of law. . . ." (189 Kan. at 50-51.)

(See also *Morris v. Hoesch*, 204 Kan. 735, 466 P. 2d 272.)

Certainly, there was evidence to support a finding that the defendant was negligent. Despite the fact that his view was somewhat obstructed by foliage, he proceeded into the intersection. It is also noted that he turned into the intersection without stopping, even though he knew that traffic on Southern went

"right by" 35th. Although *Wood v. Melton,* supra, held that evidence of a custom of one street having the right-of-way over another could not be used to "establish or defeat an action" where the custom was contrary to existing law, the defendant's knowledge of such custom would nevertheless be relevant to show his use of due care. (See *American Smelting & Refining Co. v. Wusich,* 92 Ariz. 159, 375 P. 2d 364 [1962], noting *Wood.*) However, *Wood* also provides that evidence of custom, practice and usage cannot be received, and we note that repeated objections were made to questions asked as to whether Southern was a "through" street. But these are mere observations, and notwithstanding any negligence on the part of the defendant, the determinative factor on this appeal is whether any evidence of plaintiff's contributory negligence is such that reasonable minds could reach different conclusions thereon.

Southern at its intersection with 35th was not a "through" street and plaintiff cannot be said to have had the right to proceed into that intersection without having diminished her speed and on the mere assumption that she had the right-of-way. Plaintiff testified:

"Well, as I was coming up there, I just saw this flash of this red thing. I didn't even know it was a truck until later because it happened that fast. . . . The impact was just about as soon as I saw it."

The jury visited the scene of the accident and each juror was thereby able to make a judgment as to the physical aspects at the scene. The jury was instructed as to the claims of negligence and contributory negligence in failing to yield the right-of-way, failure to maintain proper control, failure to keep a proper lookout, and driving at an excessive speed under the circumstances. Instructions were also given on the duty to drive at a speed no greater than is reasonable and prudent under the conditions then existing and at an appropriate reduced speed when approaching and crossing an intersection, and on the right-of-way statute as discussed above. The question of plaintiff's contributory negligence is one on which "reasonable minds could reach different conclusions" (*Simpson v. Davis,* supra) and is a question of fact to be determined by the jury under the circumstances of the case and not a question of law to be determined by the court. (*Daugharthy v. Bennett,* supra p. 732; *Morris v. Hoesch,* supra, p. 735.)

We note with interest a case with facts almost identical to those here presented, wherein the Louisiana Court of Appeals said:

". . . [Plaintiff] testified she thought she had the right of way. She did not even slow down, she did not observe the [defendant's] vehicle until after it had entered the intersection, and she failed to yield the right of way. We conclude that [plaintiff] was guilty of contributory negligence barring [her] recovery." (*Camey v. State Farm Mutual Auto. Insur. Co.*, 335 So. 2d 759, 764 [La. App. 1976].)

The case at bar would appear to be one for which comparative negligence was designed. However, as it occurred prior to the effective date of that act, it must be considered under the old rule that contributory negligence is a total bar to recovery. (See K.S.A. 60-258b.)

The judgment is reversed with directions to reinstate the verdict of the jury.