(627 P.2d 1155)

No. 51,588

BRADLEY MEYER, By and Through his Next Friend and Natural Guardian, WALTER MEYER, *Appellee,* v. VIOLA EMALINE STONE, Defendant and Third-Party Plaintiff, *Appellant.*

Petition for review denied July 16, 1981.

Opinion filed May 8, 1981.

*Donn J. Everett,* of Everett, Seaton and Knopp, of Manhattan, and *John F. Stites,* of Stites, Hill and Wilson, of Manhattan, for appellant.

*Frederick K. Starrett,* of Fisher, Ochs and Heck, P.A., of Topeka, for appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and J. PATRICK BRAZIL, District Judge, assigned.

ABBOTT, J.: This is an appeal in a personal injury case by the defendant, Viola Emaline Stone, from a jury verdict for $55,700 in favor of the plaintiff, Bradley Meyer.

Defendant contends the trial court erred in not sustaining her motion for a directed verdict; she further contends the trial court erred in allowing testimony relating to a possible basketball scholarship and its value, and in giving an instruction that a driver, once having stopped at an open intersection, has a duty to yield to other vehicles.

The accident occurred at the open intersection of Edgerton and Grandview streets in Manhattan, Kansas, on May 24, 1974. It was a clear day. The pavement was dry. Edgerton is 26 feet 9 inches wide between its curb lines. Mrs. Stone was traveling south on

Edgerton. She was driving a 1971 Cadillac and was going to her home, which is one-half block south of the intersection where the accident occurred. A large evergreen shrub grows at the northeast corner of the intersection. From the photographs in the record, it appears the shrub is within a few feet of Grandview and is several feet higher than street level. As Mrs. Stone looked east (to her left), her view of westbound traffic was partially obstructed by the large shrub. Her view to the west was unobstructed, but Grandview slopes sharply downhill west of the intersection. Mrs. Stone testified that cars proceeding east on Grandview suddenly appear at the crest of the hill, and she was paying particular attention to that possibility. Plaintiff, a 15-year-old, 6-foot 8-inch youth, was riding a motorcycle west on Grandview. Grandview is a street 26 feet 11 inches wide. The motorcycle was traveling between 25 and 40 mph as plaintiff approached the intersection. Plaintiff testified he was going approximately 25 mph.

Mrs. Stone testified that she knew the intersection was dangerous, presumably because the large shrub interfered with her view to the east and by the fact that eastbound cars would suddenly appear at the crest of the hill to her west. Although there was no yield or stop sign controlling traffic, she did stop at the intersection. She looked left and did not see plaintiff; she then looked right, the direction she considered the most dangerous, and started across the intersection. She did not observe the motorcycle prior to the collision.

Plaintiff saw Mrs. Stone stop at the intersection. He could see the front and rear part of her car, but the middle part was obscured by the shrub. Plaintiff estimated he was approximately 40 feet from the point of impact at that time. He realized when he was about 30 feet from the point of impact that she was proceeding into the intersection. His cycle struck the left front fender and bumper of the automobile. Plaintiff's leg was broken in three places, and he also received other injuries in the accident.

In its instructions to the jury, the trial court included instruction No. 11, as follows:

"The laws of Kansas provide that the driver of a vehicle, after having stopped at an intersection, shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard."

This instruction is an adaptation of PIK Civ. 2d 8.29 and 8.30 (1977), both of which are based on the duties of drivers as they

approach intersections controlled by stop signs or yield signs (K.S.A. 8-1528). Defendant argues that because the intersection involved was an open, uncontrolled one, instruction No. 11 was not applicable.

Instructions should be drawn with careful attention given to supporting authorities and should be accurate statements of the law. *Bechard v. Concrete Mix & Construction Inc.,* 218 Kan. 597, 601, 545 P.2d 334 (1976). An incorrect instruction is presumed to be prejudicial unless the contrary is clearly shown, and an erroneous instruction on a material issue requires reversal. *Van Mol v. Urban Renewal Agency,* 194 Kan. 773, 776, 402 P.2d 320 (1965). The thrust of defendant's argument on appeal is that instruction No. 11 led the jury to believe that she had a duty to remain stopped at the intersection and yield to the oncoming vehicle as if the intersection were controlled by a stop sign or yield sign when, in fact, it was an open intersection.

As we view the instruction, it was tantamount to having directed a verdict for plaintiff. It effectively instructed the jury that plaintiff had the right-of-way at the open intersection; that plaintiff had a right to rely on his assumption that the defendant would not enter the intersection; and that defendant had a duty to remain stopped. The instruction, given over the strenuous objection of defendant's counsel, would have been more proper as an argument to the jury. Considering the respective speeds of the two vehicles, it was a question of fact for the jury as to who had the right-of-way and as to whether under the facts of this case plaintiff was contributorily negligent, and the trial court should not have unduly emphasized to the jury one factual situation over the exclusion of others. *Byas v. Dodge City Rendering Co.,* 177 Kan. 337, 343, 279 P.2d 252 (1955). Based on the traffic laws in effect when the accident occurred, it was the duty of any driver approaching or crossing an uncontrolled intersection to drive at an appropriate reduced speed. *Daugharthy v. Bennett,* 207 Kan. 728, 732, 486 P.2d 845 (1971). Under the facts of this case, both drivers had the same duty of care.

The instruction given had the practical effect of instructing the jury that if one of the drivers was abundantly cautious and came to a complete stop, the other driver had no duty to reduce his speed if he was close enough to constitute an immediate hazard. The questions of defendant's negligence and plaintiff's contribu-

tory negligence are ones on which reasonable minds could reach different conclusions; thus, they are questions of fact to be determined by the jury. If the trial judge had directed a verdict for the plaintiff on the question of liability, we would be unable to affirm, and we see little distinction between directing a verdict and giving the instruction that was given. Instruction No. 11 is erroneous and prejudicial to the defendant, and the judgment is reversed and remanded for retrial.

The trial court allowed highly speculative evidence to be admitted on the question of damages. Plaintiff testified that he had *hoped* to obtain a scholarship to play basketball at Kansas State University, and he valued such a scholarship as being worth somewhere around $20,000. Other than the fact that plaintiff was 6 feet 8 inches tall, the record contains no admissible evidence that if he had not been injured he might have received a scholarship to KSU. Plaintiff did play high school basketball, but so do many other players who are never offered scholarships at a major basketball power such as KSU. We are of the opinion the evidence offered was highly speculative and should not have been admitted. *Tischhauser v. Little,* 179 Kan. 551, 552, 296 P.2d 1118 (1956). For the purposes of remand, the trial court is cautioned that evidence of a potential basketball scholarship is not per se inadmissible. See *Dickens v. United States,* 545 F.2d 886 (5th Cir. 1977); *Whittle v. Schemm,* 402 F. Supp. 1294 (E.D. Pa. 1975); *Borak v. Bridge,* 524 S.W.2d 773 (Tex. Civ. App. 1975); Annot., 15 A.L.R.2d 418 §§ 2, 3. If sufficient evidence on the subject is introduced at retrial, the trial court has broad discretion in admitting or rejecting it. If, however, plaintiff fails to produce additional evidence on the loss of a scholarship and its reasonable value, the evidence should be excluded.

Defendant also contends the trial court erred in not directing a verdict in her favor based on the alleged contributory negligence of plaintiff. The standard for reviewing directed verdict questions was recently restated by the Kansas Supreme Court in *White v. New Hampshire Ins. Co.,* 227 Kan. 293, 607 P.2d 43 (1980), at page 297:

"The rule governing both trial and appellate courts, in ruling upon motions for directed verdict, is set forth in *Frevele v. McAloon,* 222 Kan. 295, Syl. ¶ 5, 564 P.2d 508 (1977):

" 'In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the

evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict.' "

Here, plaintiff's version of the evidence shows he believed that defendant intended to let him pass through the intersection. Furthermore, he testified that once defendant pulled into the intersection, it was too late for him to avoid contact. Under our applicable scope of review, the trial court did not err in finding that reasonable men could differ as to whether plaintiff was contributorily negligent in this accident. The fact that plaintiff may have made some admissions which defendant claims establish contributory negligence does not alone constitute contributory negligence by the plaintiff. See *Frevele v. McAloon,* 222 Kan. 295, 301, 564 P.2d 508 (1977); *Brooks v. Dietz,* 218 Kan. 698, Syl. ¶ 7, 545 P.2d 1104 (1976).

The trial court did not err in refusing to direct a verdict for plaintiff.

We also note the trial court, without objection, gave instruction No. 14, which states:

"The laws of Kansas provide that when two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

This instruction is taken from PIK Civ. 2d 8.27 (1977) and is based on authority found in K.S.A. 8-1526(*a*). This statute, however, was not yet in effect at the time of the accident here. The accident here occurred on May 24, 1974, and at that time the statute in force was K.S.A. 1973 Supp. 8-550, which stated:

"(*a*) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.

"(*b*) When two (2) vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

On retrial, the trial court should instruct by using the former PIK Civ. 8.27, which stated:

"The laws of Kansas provide that the driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. When two vehicles enter an intersection from different highways at the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

Reversed and remanded with directions.