No. 86,685

E. Dean Carlson, In His Capacity as The Secretary of Transportation for The State of Kansas, *Appellee*, v. Underwood Equipment, Inc., A Kansas Corporation, *Appellant*.

(44 P.3d 439)

Opinion filed April 19, 2002.

*John L. Richeson*, of Anderson, Byrd, Richeson, Flaherty & Henrichs, L.L.P., of Ottawa, argued the cause and was on the brief for appellant.

*Timothy P. Orrick*, of Parkinson, Foth & Orrick, L.L.P., of Lenexa, argued the cause, and *Michael B. Rees*, chief counsel, Kansas Department of Transportation, was with him on the brief for appellee.

The opinion of the court was delivered by

Larson, J.: This condemnation appeal raises two questions: (1) Was it clearly erroneous to separate PIK Civ. 3d 131.04, a jury instruction which relates to the calculation of damages for a partial taking, into three different instructions? and (2) Was it reversible error for extraneous documents included in an exhibit which were admitted into evidence pursuant to the condemnee's request and over the condemnor's objection to be considered by the jury? We answer each question in the negative and affirm the trial court.

The Kansas Department of Transportation (KDOT) initiated an eminent domain action against Underwood Equipment, Inc. (Underwood) to acquire 1.01 acres of a 10.6-acre track to improve an interchange at I-35 and K-68 highways in Franklin County, Kansas. The court-appointed appraisers awarded Underwood $145,000 for the taking.

KDOT was dissatisfied with the award and filed the present action to have a jury determine the just compensation that should be awarded for the taking.

At trial, KDOT presented testimony of expert Bernie Shaner that the values before and after the taking were $490,000 and $445,000, respectively, with total compensation of $45,000 due. The other KDOT expert, Tom Frey, opined the values before and after were $436,800.30 and $402,739.04, respectively, with total compensation of $34,061.26 due.

Glenn Underwood testified that the values before and after were $2,260,000 and $1,965,000, respectively, with total compensation of $295,000 due. David Webb, an expert for Underwood, testified that the values before and after were $1,610,000 and $1,366,246, respectively, with total compensation of $243,754 due.

The testimony of all witnesses included computation of the reduction in value of the property due to loss of the 1.01 tract acre as well as damages relating to moving and replacing various fixtures on the property such as the sewer system, fencing, a tree, and large rocks bordering the property, generally referred to as "costs to cure."

At trial, during KDOT's cross-examination of Webb, his appraisal report was marked for identification. The report was used for the limited purpose of showing a discrepancy between Webb's definition of fair market value and that of other authoritative sources. Webb identified the exhibit as a copy of his appraisal report that he had brought to court that day. After cross-examination was complete, Underwood moved to introduce the report into evidence. KDOT objected, contending the entire report should not be admitted but only relevant portions. The trial court admitted the entire report.

The instructions submitted by Underwood as to the measure of compensation for the partial taking consisted of PIK Civ. 3d 131.04 divided into three separate instructions. There was no objection by KDOT, and the instructions were given as Underwood requested.

During deliberations, the jury returned with the following question: "What County thinks its worth (During Mr. Frey's testimony)?" The parties were unclear as to the meaning of the ques-

tion. KDOT's counsel questioned whether the jury was asking for the county appraised value of the entire property or merely the improvements. KDOT admitted that Frey had testified concerning the county's appraisal of the improvements, but argued the appraised value for the entire property was not part of the record. During this colloquy, Underwood's expert witness, Webb, stated it was his belief that the value of the county's overall appraisal was part of the record because it was included within his appraisal report. The court and KDOT's counsel indicated they did not realize these documents were included in the exhibit. The court requested that exhibit be taken from the jury room, and the additional documents were found to be contained in the exhibit.

KDOT's counsel argued the documents should not be permitted to return to the jury because he did not know that at the time exhibit 31 was introduced, it was anything other than an exact duplicate of Webb's appraisal report. Underwood argued that it would be error to delete the documents since they had already gone to the jury room. The court found that the documents had in fact been admitted into evidence and allowed them to return to the jury.

The jury returned a verdict form which found the values of the property before and after the taking occurred to be $490,000 and $426,000, respectively. The total amount awarded for just compensation was $64,000. This resulted in a $81,000 reduction from the amount awarded by the court-appointed appraisers. Underwood appealed. Our jurisdiction is pursuant to K.S.A. 26-504.

We first consider Underwood's contention that by dividing PIK Civ. 3d 131.04 into three separate parts and submitting it to the jury as instructions Nos. 9, 10, and 11, the jury was unable to properly compute the cost to cure damages set forth in K.S.A. 26-513(d).

Our standard of review is as stated in *Hawkinson v. Bennett*, 265 Kan. 564, 581, 962 P.2d 445 (1998): "An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict." This clearly erroneous standard is required because of the lack of any objection

on Underwood's behalf. K.S.A. 60-251(b). Additionally, Underwood not only failed to object but was the party who requested the instructions.

Underwood's contentions fail for any one of three reasons. The instructions given were those proposed by Underwood. As we have said: "On appellate review, a party may not complain of rulings or matters to which it has consented or take advantage of error that it invited or in which it participated." *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, Syl. ¶ 3, 856 P.2d 906 (1993).

We have also applied the "law of the case" doctrine in situations such as this as we did in *Reinsch v. Cities Service Gas Co.*, 170 Kan. 37, 41, 223 P.2d 741 (1950), where we said: "[A] review of the instructions given by the trial court which, since they were neither objected to when given nor challenged by a motion for a new trial, are not subject to appellate review and, under all our decisions, become the law of the case." See also *Abramson v. Wolf*, 138 Kan. 856, 859, 28 P.2d 975 (1934).

Finally, and most importantly, the instructions as given are a correct statement of the law. Instruction No. 1 told the jury that "[y]ou should construe each instruction in the light of and in harmony with the other instructions, and you should apply the instructions *as a whole* to the evidence." (Emphasis added.)

Instruction No. 9 centered the focus on market value and set forth the first three paragraphs of PIK Civ. 3d 131.04. Instruction No. 10 gave the list of factors for the jury to consider in determining market value and included all of the factors that are statutorily set forth in K.S.A. 26-513(d)(1) through (15). These factors clearly directed the jury to consider all of the "costs to cure" evidence which was presented in the trial. Instruction No. 11, the last sentence of PIK Civ. 3d 131.04, commanded the jury to consider those factors not as separate items of damage, but rather as to how they affect market value of the property.

Underwood's argument that the jury would be unable to consider these instructions together is unreasonable, illogical, and without merit.

We also do not find *Van Mol v. Urban Renewal Agency*, 194 Kan. 773, 402 P.2d 320 (1965), to aid Underwood's arguments.

The instructions there differ materially and the case is not applicable to our facts.

The "cost to cure" factors were clearly included under subsections (7), (8), (9), and (14) of K.S.A. 26-513(d), which were set forth in instruction No. 10. The testimony for both Underwood and KDOT included loss of value of the acre taken as well as the other costs that would be necessitated by the taking.

The jury was properly instructed. It obviously did not reach a result to Underwood's approval, but the award was within the limits of the testimony and opinions presented. There was no error in the instructions.

There was likewise no error as the result of certain documents being included within exhibit 31, which was witness Webb's appraisal report.

It was Underwood who moved for admission of this exhibit over KDOT's objection. It was Underwood's expert who included the documents within the report and advised the court of their presence when the jury's question was being considered.

While Underwood states that "both counsel" did not know the extra information was in exhibit 31, the record reflects that it was the court and KDOT's counsel who expressed lack of knowledge of the included documents. KDOT objected to the documents being allowed to be considered. Underwood's counsel contended the documents needed to remain with the jury and now complains about a ruling it requested below.

Underwood's arguments on appeal that it was prejudicial for the jury to consider these reports fail for the same reasons that the first issue fails.

The trial court's ruling was correct. The documents had been admitted into evidence and were properly returned to the jury.

There was no contention of jury misconduct below and issues not raised to the trial court may not be raised for the first time on appeal. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999).

The record reflects Underwood created the problem, then argued against withdrawal of the documents. Our previous quote

from *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, Syl. ¶ 3, concerning invited error is again applicable.

Additionally, the jury's question related to witness Frey's testimony, and we have no way of knowing whether the documents from witness Webb's exhibit were a focus of the jury's considerations.

This issue is, as we held with the one previously raised, without sufficient merit to require a new trial. This was a fair trial in which the result reached was within the perimeters of the evidence presented.

The trial court is affirmed.